418 A.2d 476

**COMMONWEALTH of Pennsylvania**

v.

**Raymond M. GUILIANO, Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 1979.

Filed Jan. 18, 1980.

420

Joseph J. Musto, Wilkes–Barre, for appellant.

Anthony J. Lucadamo, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

Before HESTER, HOFFMAN and CATANIA,* JJ.

HESTER, Judge:

Appellant Raymond M. Guiliano was convicted by a jury in the Court of Common Pleas of Luzerne County of two counts of involuntary manslaughter. Post–trial motions were argued and denied and sentences of nine to eighteen months imprisonment were imposed on each count, to run consecutively. This direct appeal followed.

Facts adduced at trial established the following. At approximately 11:30 p. m. on July 9, 1976, appellant lost control of his car and smashed into a pole on Route 315 in Plains Township, Luzerne County. Two passengers were killed instantly, while appellant sustained only minor injuries. From the scene, appellant was transported by ambulance to Wilkes–Barre General Hospital where, after preliminary examination and X–rays, a blood sample was drawn from his arm at the direction of the investigating officer. Chemical analysis established a reading of .11% blood alcohol level.

* President Judge FRANCIS J. CATANIA of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

 Appellant first contends the court erred in refusing to suppress the results of the blood test. At the pre–trial suppression hearing, it was shown that appellant was first interviewed at the hospital by Officer George Mikelski of the Plains Township police force. After receiving a statement from appellant relative to the accident, Officer Mikelski summoned his superior, Sergeant Frank Pizzella, to the hospital. Pizzella had observed appellant briefly at the accident scene and, with Mikelski, was suspicious of appellant's explanation of how the smash–up had occurred.[1] At the hospital, Pizzella noticed appellant's eyes were dilated, his pupils were a pinkish color, and his speech fluttered. Suspecting appellant had been drinking, the officer asked appellant if he would submit to a blood test. After some discussion, appellant signed a consent form and the test was performed. Appellant was not arrested or charged with any crimes until the following month. He now contends his consent was not voluntary and intelligent, *Commonwealth v. Curtis*, 253 Pa.Super. 163, 384 A.2d 1280 (1978), that he was not under arrest, *Commonwealth v. Murray*, 441 Pa. 22, 271 A.2d 500 (1970) and therefore the test results should have been suppressed. We need not decide these issues for it is clear that probable cause existed to extract the blood sample. In *Commonwealth v. Funk*, 254 Pa.Super. 233, 240, 385 A.2d 995, 999 (1978), this Court stated:

We recognize that as a blood test is a search, its administration on a suspect unable to refuse it must pass the test of constitutionality. In *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452 (1974) applying this test, we looked to *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), and held that a blood test may be taken against a suspect's wishes and without

1. In his statement, appellant said he was travelling south on Route 315 in the outside lane when he saw a car pulling out of the intersection at the traffic light. Appellant swerved to the right to avoid the car, and then fishtailed into the woods. The officers were dubious of this account since the traffic light was one–half mile from the point of impact. Appellant's statement was suppressed by the court for failure to give required *Miranda* warnings prior to interrogation.

an arrest, where the police have probable cause to believe the suspect was driving while intoxicated, in order to get evidence of the blood alcohol level, evidence that is particularly evanescent.

We do not hesitate in deciding that probable cause was present to believe that appellant had been drinking while driving. Appellant's pupils, eyes, and speech all suggested consumption of alcohol. Further, a serious one—car accident had occurred, thus corroborating other evidence of intoxication. *Funk*, supra. Moreover, the test was performed in a reasonable manner by a qualified technician in a hospital. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Finally, the decision to take a blood test, as opposed to a breathalyzer was reasonable. The Vehicle Code, Act of April 29, 1959, P.L. 58 (75 P.S. § 624.1(f)) in effect at the time the proceedings below were instituted,[2] provides:

> (f) If for any reason a person is physically unable to supply enough breath to complete a chemical test a physician or a technician acting under his direction may withdraw blood for the purpose of determining the alcoholic content therein. Consent is hereby given by such persons. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence.

In *Funk*, supra, we said, "[T]he decision to take a blood test . . . will not be faulted where there is a reasonable basis for believing that a driver in a precarious medical condition will not be able to summon enough breath to complete a breathalyzer test." 254 Pa.Super. 239, 385 A.2d at 998; *Commonwealth v. Lee*, 257 Pa.Super. 326, 390 A.2d 845 (1979). Here, appellant had been in a serious accident. Officer Pizzella stated he was very reluctant to transport appellant to the police barracks for a breathalyzer in view of the danger such a move may pose to appellant. The officer was fearful appellant may have sustained internal injuries in addition to the contusions and lacerated lip that were

2. Currently, Act of June 17, 1976, P.L. 162, No. 81, § 1 (75 Pa.C.S.A. § 1547(g)).

clearly visible and did not wish to aggravate same by a trip to the barracks. Under such circumstances, we cannot say that a choice to forego a breath test in favor of a blood test was unreasonable.[3]

Next, appellant urges that the court improperly restricted his examination of Sergeant Pizzella. After it was shown that the blood test produced a reading of .11% alcohol, defense counsel asked the officer whether such a reading indicated a very serious drinking situation. An objection by the Commonwealth attorney was sustained. R.R. 49a. The Vehicle Code provides that if the amount of alcohol by weight in the blood is .10% or more, "it shall be presumed that the defendant was under the influence of intoxicating liquor." 75 P.S. § 624.1(c)(3) (currently, 75 Pa.C.S.A. § 1547(d)(3)). See, *Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204 (1974); *Commonwealth v. Gearhart*, 253 Pa.Super. 238, 384 A.2d 1321 (1978). As the statute itself evaluates the results of the test in terms of legal intoxication, further evidence bearing on the level of alcohol is ordinarily unnecessary. The accused is, however, free to introduce any other competent evidence concerning the question whether or not he was under the influence of alcohol. 75 P.S. § 624.1(d); (75 Pa.C.S.A. § 1547(e)). But to testify as to the relationship between the alcohol and intoxication, or to give an opinion as to what a given percentage of alcohol in the blood indicates with respect to intoxication, or as to the effect of such given percentage of alcohol upon the mental or physical conduct of defendant, a witness must be shown to be properly qualified as an expert upon the subject. 31 Am.Jur.2d, Expert and Opinion Evidence, § 116; Anno., 77 A.L.R.2d 971. There was no testimony instantly showing Sergeant Pizzella possessed the requisite medical training to competently evaluate the results of a scientific

---

3. We also reject appellant's contention that the test results must be suppressed as a fruit of the poisonous tree of appellant's confession, see fn. 1, supra. *Wong Sun v. U. S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Our review of the suppression hearing persuades us that probable cause existed to extract a blood sample quite apart from any verbal offerings of appellant.

test of blood. While a lay witness may give an opinion as to intoxication drawn from his external observations of a suspect's appearance and demeanor, *Commonwealth v. Reynolds*, 256 Pa.Super. 259, 389 A.2d 1113 (1978), evaluation of a scientific test is more properly in the realm of a witness shown to be medically or scientifically trained. As the officer was not such an expert, the court did not err in excluding his testimony.

■ Appellant next argues that the court erred in charging the jury concerning the issue of causation when it stated: "In other words, [appellant's] conduct must amount to the legal, efficient, or proximate cause of the death." R.R. 60a. Of course, traditional tort concepts of proximate cause have long since been discarded in homicide prosecutions in Pennsylvania in favor of the more stringent test of direct or legal cause. *Commonwealth v. Baker*, 466 Pa. 382, 353 A.2d 406 (1976); *Commonwealth v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Paquetee*, 451 Pa. 250, 301 A.2d 837 (1973); *Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310 (1961). Thus, while the mention of "proximate cause" in the charge was incorrect and unwise, we are not persuaded it constituted reversible error. The court went to great lengths in explaining the issue of causation, stating appellant's conduct had to be a "direct", R.R. 52a, 58a, and "legal", R.R. 60a, cause of death. Further, the court used illustrations showing that the mere doing of an unlawful act would not be sufficient to sustain a conviction for involuntary manslaughter, but that the act must be the direct cause of the victims' deaths. See *Commonwealth v. Sisca*, 245 Pa.Super. 125, 369 A.2d 325 (1976). Thus, the court did not in any way suggest that appellant's guilt or innocence would depend on "accidental or fortuitous circumstances as now embraced by [the] modern . . . concept of proximate cause." *Root*, supra, 403 Pa. at 576, 170 A.2d at 312. Reading the charge as a whole, and not just isolated excerpts, *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978); *Commonwealth v. Dougherty*, 259 Pa.Super. 88, 393 A.2d 730 (1978), we are satisfied the court correctly

charged the issue of causation. Accord, *Commonwealth v. Jennings*, 446 Pa. 294, 285 A.2d 143 (1971) (mere mention of "proximate cause" in homicide charge, held, not to constitute reversible error where charge was considered as a whole).

Finally, appellant contends his sentence is illegal. The court sentenced him to nine to eighteen months imprisonment as to each count of involuntary manslaughter, the sentences to run consecutively. It has long been the law in this Commonwealth that in cases of involuntary manslaughter in which more than one person is killed in a single accident, only one sentence may be imposed. *Commonwealth v. Reynolds*, 256 Pa.Super. 259, 389 A.2d 1113 (1978); *Commonwealth v. Speelman*, 235 Pa.Super. 109, 341 A.2d 138 (1975); *Commonwealth v. Cox*, 209 Pa.Super. 457, 228 A.2d 30 (1967). Thus, we agree, and the Commonwealth concedes, that appellant's sentence is illegal and he is entitled to be resentenced.

Judgment of sentence vacated and case remanded for resentencing.