452 A.2d 803

**COMMONWEALTH of Pennsylvania**

v.

**Catherine GOTTO, Appellant.**

Superior Court of Pennsylvania.

Argued March 10, 1980.

Filed Nov. 19, 1982.

Petition for Allowance of Appeal Denied May 9, 1983.

Robert C. Brown, Jr., Easton, for appellant.

John E. Gallagher, District Attorney, Easton, did not file a brief on behalf of Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

Appellant, Catherine C. Gotto, was convicted of homicide by vehicle [1] and driving while under the influence of alcohol,[2]

1. 75 Pa.C.S.A. § 3732.

2. 75 Pa.C.S.A. § 3731.

by a jury, on April 26, 1978.[3] She was convicted also of the summary offense of "Meeting of Vehicles Proceeding in Opposite Direction"[4] by the court on May 15, 1978. Post-verdict motions were denied. On May 2, 1979, Gotto was sentenced to serve one year imprisonment. This appeal followed. We affirm the decision of the trial court.

The following issues are raised in this appeal:

1. The homicide by vehicle statute is unconstitutional.

2. The homicide by vehicle statute is contrary to common law.

3. The summary conviction is a nullity.

4. That blood-alcohol test results obtained by the Commonwealth were inadmissible.

5. That statements made to the police shortly following the accident were inadmissible.

6. That cross-examination was wrongfully limited.

7. That photographic evidence concerning the accident scene was relevant and should have been admitted.

8. That requested points for charge should have been read.

9. That the court's charge invaded the province of the jury.

We will address the issues in the order which they have been presented us.

This case has arisen out of the following circumstances. Gotto was involved in a three-car accident in Bushkill Township, Northampton County, on October 14, 1977 at 11:20 p.m. At the time of the accident it was raining. Gotto testified that she lost control of her car because a truck driven by Brooks Engler had crossed the center line in the approaching traffic. Gotto then lost control, drove in the opposite lane, and struck an oncoming car operated by Elwood Sandt. Sandt was killed. Engler testified the accident occurred

**3.** The resolution of this appeal has been delayed pending the filing of our opinion in *Commonwealth v. Koch,* 297 Pa.Super. 350, 443 A.2d 1157 (1982).

**4.** 75 Pa.C.S.A. § 3302.

when Gotto crossed the center line striking his truck. That she subsequently lost control and finally collided with the vehicle driven by Sandt.

Gotto was injured in the accident. She was taken to the emergency room at St. Luke's Hospital in Bethlehem. She consented to having blood drawn to be used for medical purposes. She signed a consent form. Gotto, however, has no recollection of signing a consent form. Some time later, the police arrived at the hospital to ask Gotto some questions related to the accident. The police subsequently asked the hospital to test the blood they had taken from Gotto, with her consent, for its alcohol content. The test was performed on October 17, 1977. It indicated a .2 percent alcohol level.

■ We have said very recently that the statute defining homicide by vehicle is constitutional and that it is not contrary to common law. Accordingly, we are satisfied that the trial court correctly held that the statute was constitutional and not contrary to common law. *Commonwealth v. Koch,* supra.[5]

Next, Gotto claims that her summary conviction for "Meeting of Vehicles Proceeding in Opposite Directions" is a nullity because she was convicted more than three days after trial in violation of Pennsylvania Rule of Criminal Procedure, Rule 1122. Summary proceedings are actually governed by Pennsylvania Rule of Criminal Procedure, Rule 63 which in pertinent part states:

(e) The verdict and sentence, if any, shall be announced in open court immediately upon the conclusion of the trial.

■ We have held that an issue raised on appeal concerning the court's compliance with Rule 63(e) is waived if the defendant fails to object to the court's actions. Gotto failed to object to the court taking the summary charge under advisement. The issue is waived. *Commonwealth v. Wadzinski,* 239 Pa.Super. 76, 361 A.2d 790 (1976).

**5.** We are satisfied that the punishment provided under the homicide by vehicle statute is neither cruel or unusual. *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).

Gotto asserts that the results of a blood-alcohol test were improperly admitted into evidence because the test was performed in violation of her statutory rights under Section 1547 of the Motor Vehicle Code.[6] Specifically, she argues that her consent to a blood test could not have been a knowing one because she had not been advised of her right to submit instead to a breath test.

The suppression court[7] found as a fact that a police officer who met with appellant at the hospital on the evening of the accident asked for her permission to conduct a blood alcohol test. Appellant agreed and signed a written consent form. The test was subsequently made on a blood sample that had been drawn earlier for medical purposes.

We do not agree that appellant's consent was vitiated because she was not told that a breath test might have been made.

Section 1547 of the Motor Vehicle Code provides in pertinent part:

> (a) General rule.—Any person who operates a motor vehicle in this Commonwealth shall be deemed to have given consent to a chemical test of breath or blood for the purpose of determining the alcoholic content of blood if a police officer shall have reasonable grounds to believe the person to have been driving a motor vehicle while under the influence of alcohol. The test shall be administered by qualified personnel and with equipment approved by the department. Qualified personnel means a physician or a technician acting under the physician's direction or a police officer who has fulfilled the training requirements in the use of such equipment in a training program approved by the department.
>
> \*　　\*　　\*　　\*　　\*　　\*

**6.** Act of June 17, 1976, P.L. 162, No. 81, 75 Pa.C.S.A. § 1547.

**7.** The suppression court's ruling that the results of the blood alcohol test were admissible was based only on constitutional, not statutory grounds. No constitutional argument is presented to us as to the blood test. The statutory argument advanced before us was made to the trial court.

(g) Blood test in liew of breath test.—If for any reason a person is physically unable to supply enough breath to complete a chemical test, a physician or nurse or a technician acting under a physician's direction may withdraw blood for the purpose of determining its alcoholic content. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence in the same manner as are the results of the breath chemical test. .The operating privilege of any person who refuses to allow a blood test under the above circumstances shall be suspended pursuant to subsection (b).

The specific provision of subsection (g) do suggest that a blood test is to be made as an alternative to the first choice breath test. This court has termed the blood test the "less desirable alternative." See *Commonwealth v. Funk*, 254 Pa.Super. 233, 385 A.2d 995 (1978).

However, in *Funk*, supra, we also said that the Vehicle Code is to be interpreted with a "gloss of reasonableness." In *Funk*, the appellant driver was seriously injured in an automobile accident and at the time the blood test was administered, was passing in and out of consciousness. We wrote: "the decision to take a blood sample, the less desirable alternative, will not be faulted where there is a reasonable basis for believing that a driver in a precarious medical condition will not be able to summon enough breath to complete a breathalyzer test."

We are not given reason to believe that appellant in the instant matter was unable to take a breathalyzer test. Perhaps the police should have instead requested that test.

██  We are not, however, prepared to reverse the decision on the grounds that lack of information as to the breathalyzer test rendered appellant's consent involuntary. This is because we believe that under the circumstances of this case, the testing of blood rather than breath was if error at all, harmless error. Appellant's blood had been drawn

before the request to test was made by the police. She was subjected to no further intrusion or search.[8]

Gotto complains that any statements she made to the police at the hospital shortly after the accident were improperly admitted into evidence.

■ In *Commonwealth v. Bussey*, 486 Pa. 221, 232, 404 A.2d 1309, 1315 (1979), our Supreme Court said that statements given to police, who are engaged in an interrogation of a defendant, shall only be admissible if the defendant is proven to have waived his rights prior to giving the incriminating statements. In the instant case, Gotto was read her *Miranda* warnings and gave a statement to the police. There is a signed waiver form in the record. Gotto contends that the waiver was not valid because of her unclear mental condition at the time of the investigation. We are satisfied after a review of the record, that her waiver was valid. However, Gotto complains that she was not informed that a death had occurred in the accident, that therefore, she was unaware that she could be charged with homicide by vehicle, and that accordingly the waiver could not be valid. In *Commonwealth v. Reaves*, 279 Pa.Super. 581, 586, 421 A.2d 351, 354 (1980), we said:

Defendant cites the case of *Commonwealth v. Dixon*, 475 Pa. 17, 379 A.2d 553 (1977) in support of his proposition. In that case the court held that a defendant's waiver of her *Miranda* rights was ineffective because she misapprehended which of two offenses the police were investigating when she was questioned. The defendant thought that she was being questioned about her failure to make restitution in connection with a malicious mis-

8. Gotto also complains that the blood-alcohol test results were inadmissible because the Commonwealth failed to prove that the test was performed by equipment approved by the Pennsylvania Department of Health. The equipment used to perform the blood-alcohol test was approved by the Commonwealth Department of Health pursuant to regulations found in the Pennsylvania Bulletin, Vol. 8, No. 4 (January 28, 1978). This approval was made prior to trial, though after the tests were undertaken. We are satisfied that the tests were administered by properly approved equipment. *Commonwealth v. Benson*, 280 Pa.Super. 20, 421 A.2d 383 (1980).

chief charge when instead the questioning concerned a murder. During the questioning the defendant admitted killing her son and was charged with that murder. The Supreme Court held that defendant's statement in which she admitted killing her son to the police was inadmissible at trial because the defendant was not aware of the nature of the investigation at the time she waived her rights. *Dixon,* supra, therefore, stands for the proposition that an accused must be aware of the *nature* of the investigation at the time of the questioning before a waiver of *Miranda* rights can be held to be effective. It does not mean that an accused must be aware of all the *consequences* which might flow from a waiver of his *Miranda* rights before he can effectively waive them. A suspect, therefore, need not have knowledge of the "technicalities" of the criminal offense involved; rather, it is necessary only that he be aware of the "transaction" involved. *Commonwealth v. Dixon,* supra; *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974). We also hold that a defendant need not be aware of every conceivable *consequence* which might flow from a waiver of his *Miranda* rights in order to effectuate such a waiver as it is impossible to foresee every such possible consequence. We merely hold that the defendant must be informed that his statements can and will be used against him in a court of law as required in *Miranda.* Since the defendant was informed of this we hold that his waiver was effective and we refuse to hold that because he was *also* informed that his statements could be used against him in a juvenile proceeding that such warning constituted a promise to him that he would be handled as a juvenile.

The record indicates that Gotto was completely aware of the criminal transaction involved in her interrogation. We are convinced that the waiver was valid.

Gotto remonstrates also that her cross-examination of Mr. Brooks Engler was improperly limited. Specifically, Gotto complains that she should have been permitted to ask En-

gler, one of the other drivers in the accident, whether he had been arrested or charged with any crime arising out of the accident. Gotto argues that since Engler was not charged with any crimes following the accident, and because under his version of the accident he should have been charged, that her questioning would have demonstrated Engler's bias or prejudice.

■ The scope of cross-examination in a criminal prosecution is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Commonwealth v. Rhem*, 283 Pa.Super. 565, 424 A.2d 1345 (1980). Gotto essentially contends that Engler caused the accident. She sought to pursue this theory during her cross-examination of Engler. We are unable to find that the trial court abused its discretion because Gotto was able to present this defense through her own testimony. The record indicates that she would not have been able to extend further credence to her theory through the cross-examination she suggests herein that she was improperly denied.

■ Next, Gotto claims that photographic evidence concerning the accident scene was relevant and should have been admitted. These photographs taken on Gotto's behalf showed the accident scene not immediately following the accident but some time after all the wreckage had been cleared. Gotto desired to admit the photographs into evidence in order to show a sampling of traffic and the traffic patterns followed. The record indicates that two of the photographs showed cars swerving out of their lane into the opposing lane. The other photograph showed a car in the proper lane. Gotto sought to use these photographs to prove that Engler probably swerved out of his lane. The admission of photographs into evidence is a matter within the discretion of the trial court. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). We cannot find an abuse of discretion here because Gotto was able to present this defense through her own testimony.

Gotto asserts further that her requested points for charge should have been read. Five of the six requested points for charge which were not adopted by the trial court concerned the degree of culpability required in order to be convicted of homicide by vehicle. Each requested charge stated that Gotto must be proven to have intentionally, recklessly and knowingly drove in a manner which resulted in the two deaths. We are satisfied that the trial court's charge in this respect was proper. *Commonwealth v. Koch,* supra. Gotto asserts also that it was improper for the trial court not to charge as requested in point No. 14 which she contends correctly states the law concerning driving while under the influence of alcohol.

The requested point for charge, number 14, states:

14. If you find the Commonwealth has failed to prove beyond a reasonable doubt that on the night of the accident the Defendant, Catherine Gotto, was incapable of safely driving her automobile due to the consumption of alcohol then you must return a verdict of not guilty as to that charge.

We are persuaded that the trial court properly charged the jury as to the driving while under the influence of alcohol charge. The record indicates that while the trial court did not adopt requested point for charge 14, it did properly charge the jury.

Finally, Gotto contends that the court's charge invaded the province of the jury. This assertion is not supported by the record. Gotto complains about the following portion of the charge:

If you believe the testimony of the Commonwealth, legally, there is ample testimony before you to arrive at that conclusion. If there were not legally sufficient testimony, I would have thrown the case out before it started or at the end of the Commonwealth's case.

However, the court said also:

Now, the defendant comes before you. The defendant's contention is equally clear and equally simple. The defendant says, "True, that on that particular evening, I was

drinking, but the amount that I had to drink did not in any way influence me and did not in any way influence my ability to drive. That the accident happened not because of my not having the intellect that I usually have and the alertness and control that I usually have, but that the accident was caused on that night by the driving of another person," and she told you that as she approached this intersection, she saw the lights. She could see that the lights were on the wrong side of the road. She pulled over as far as she could and as they came to the crest of the hill, the other car, going back into his own side of the road—she hit the rear end of that truck and then careened into the car that was immediately behind it, namely, the car of Mr. Sandt; and that, therefore, the only thing that caused that accident was nothing that she did because she did everything that a driver, under complete control of the automobile, would do, but that everything that she did was proper, but it was caused by the fact that the truck was on the wrong side of the road, hit her car and that her car was forced into the other side of the road and hitting the other car.

I say to you that if you accept that testimony as true, you have no alternative but to acquit.

It will be up to you to review all of the testimony of all of the parties and find out in this particular case wherein the proof and the facts lie and then take those facts and apply them to the law and decide whether you are convinced beyond a reasonable doubt of each and every element of that crime before you can come out with a verdict of guilty.

■ In *Commonwealth v. Emmi,* 290 Pa.Super. 86, 434 A.2d 142 (1981), we reasserted the frequently stated rule that a trial judge may not express to the jury his opinion that the accused is guilty. Such a declaration would invade the province of the jury and thereby violate the accused's rights. *Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972). We are convinced that the trial judge herein did not invade the province of the jury. He did not state any

opinion as to guilt. The record indicates clearly that the trial judge restated the positions expressed by the Commonwealth and by Gotto. He said that if the jury believed the Commonwealth it should find Gotto guilty and if it believed Gotto it should find her innocent. We cannot find that the trial judge acted improperly.

Accordingly, having determined that the trial court acted properly, we affirm the judgment of sentence it imposed.

SPAETH, J., concurs in result.