499 A.2d 317

**COMMONWEALTH of Pennsylvania**

v.

**Thomas S. CIERI, Appellant.**

Superior Court of Pennsylvania.

Argued March 27, 1985.

Filed Sept. 18, 1985.

Robert John, Hatboro, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Com., appellee.

Before SPAETH, President Judge, and JOHNSON and SHOYER *, JJ.

SPAETH, President Judge:

This is an appeal from judgment of sentence for homicide by vehicle while driving under the influence of alcohol or a controlled substance, involuntary manslaughter, reckless endangerment, and driving under the influence. Appellant argues (1) that the trial court erred in refusing to suppress the results of a blood alcohol test performed by police on a sample of his blood; (2) that the trial court erred in refusing to permit a witness to testify; (3) that the verdict was against the weight of the evidence; and (4) that the mandatory sentencing provisions of 75 Pa.C.S. § 3735 are unconstitutional. We affirm.

–1–

The standard by which we must review the trial court's refusal to suppress the results of the test of appellant's blood alcohol level is that we "will only consider the evidence of the prosecution and so much of the evidence for the defense as, read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Benedetto*, 316 Pa.Super. 134, 136, 462 A.2d 830, 831 (1983) *citing Commonwealth v. Leveille*, 289 Pa.Super. 248, 433 A.2d 50 (1981). So viewed, the evidence was as follows.

Shortly after midnight on August 13, 1983, appellant, driving his car in Hatboro, Pennsylvania, with his brother Judson as a passenger, collided head-on with a car driven by Gary McMillan. Katherine Waldron, McMillan's passenger, died as a result of injuries suffered in the collision. Sergeant Beadling of the Hatboro Police Department arrived at

* The Honorable Kendall H. SHOYER, Senior Judge of the Court of Common Pleas of Philadelphia County, is sitting by designation.

the scene three to five minutes after receiving a call, N.T. 1/23/84 at 8, and found appellant slumped over in the front seat. The sergeant testified that he "couldn't question [appellant] about the nature of his injuries, [and therefore] decided that it was best to leave [appellant] where he was, ... rather than exaggerating any injuries that [he] might not know about." *Id.* at 10. The sergeant "notice[d] an odor of alcohol on or about [appellant's] person," but appellant "was in a semi-conscious condition and did not respond to [the sergeant's] speaking to him initially." *Id.* at 14. The sergeant radioed the police dispatcher to call local hospitals to request that a blood sample be withdrawn from appellant when he arrived for treatment. *Id.* at 14–15, 29–30. The sergeant explained that he made this request because:

> We did have serious injuries. And as part of an investigative procedure, and because I felt Mr. Cieri might have been drinking, I requested the defendant be done. He was in no condition to submit to a breathalyzer test. So the withdrawal of blood was the only method I had. *Id.* at 15.

Rescue personnel transported appellant to Abington Memorial Hospital for treatment. For the next two hours, the police continued to investigate the accident and interview witnesses. In the course of the investigation they discovered evidence that marijuana had been used recently in appellant's car. *Id.* at 31–32.

Nurse Laird, the nurse on duty in the emergency room of Abington Memorial Hospital, testified that appellant arrived at the hospital at about 1:00 a.m. *Id.* at 39. When she interviewed appellant, she "did notice the smell of alcohol upon his breath when he was talking." *Id.* at 42. She testified that the attending physician, Dr. Crim, withdrew enough blood from appellant to fill six or seven test tubes, which was the routine procedure to enable the staff to perform necessary tests, with an extra tube included in case additional tests were required. Dr. Crim withdrew the blood almost immediately upon appellant's arrival. *Id.* at

43–44. At about 2:00 a.m., Nurse Laird spoke with the police dispatcher and learned from him that the police had requested a blood sample. About an hour later, Sergeant Beadling called and Nurse Laird told him that the blood had been withdrawn and that he could pick up the sample at his convenience. She then went to appellant, told him that the police had requested a blood sample, and asked that he sign a consent form enabling her to give the blood sample to the police. *Id.* at 45–47. She read the consent form to him,[1] and appellant signed it. She testified that when appellant signed the form, he was in approximately the same condition as when he had arrived at the hospital and was "able to answer questions appropriately;" he had received no medication. *Id.* at 49.

At about 3:00 a.m., Sergeant Beadling came to the emergency room to pick up the blood sample. Appellant was in the operating room. Nurse Laird asked the sergeant to sign the consent form too, and after he did, she gave him the blood sample. Neither the sergeant nor any other police officer had spoken with appellant regarding his blood being tested for alcohol level. *Id.* at 15–16. The subsequent test of appellant's blood conducted by police technicians revealed a blood alcohol level of .11 N.T. 1/25/84 at 67.

Appellant's argument that the results of this test should have been suppressed is that since the withdrawal of his blood was undoubtedly a search, and was conducted without a warrant at a time when appellant was not under arrest, it can be justified only under one of the well-established

1. The consent form was read into the record by Nurse Laird. It provided:
 "I consent to the withdrawal of blood and/or collection of a urine sample by persons authorized to do so by Abington Memorial Hospital[ ] ... [f]or the purpose of determining the presence of alcohol or a controlled substance in my system. The police officers [*sic*] named below has explained my legal rights to me, the nature of the test or tests and possible risks associated with the test have been explained to me. I understand if I refuse my consent the test will not be performed."
 N.T. 1/25/84 at 16, 55.

exceptions to the warrant requirement, Brief for Appellant at 17–24; that the only possibly applicable exception is consent; and that although he did sign the consent form given him by Nurse Laird, his consent was invalid both because of the extent of his injuries and because, having spoken with no police officer, he had "no notice of the criminal investigative purpose of the blood test." *Id.* at 18–19. In response, the Commonwealth argues that since the blood was withdrawn by hospital personnel for purposes of treatment, the withdrawal was a private search, and as such could not have violated appellant's fourth amendment rights, Brief for Appellee at 6–8, and further, that in any event, there was implied consent to the search. *Id.* at 9–11.

It is clear that the fourth amendment "proscrib[es] only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85, 94 (1985) *citing Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (BLACKMUN, J., dissenting). *See also Commonwealth v. Dembo,* 451 Pa. 1, 301 A.2d 689 (1973); *Commonwealth v. Borecky,* 277 Pa.Super. 244, 419 A.2d 753 (1980). If the Commonwealth is correct, therefore, that here the search was private, we need not consider appellant's argument that a warrant should have been obtained.

To determine whether a search was "private," the critical factor "is whether [the private individual] in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state...." *Commonwealth v. Borecky, supra,* 277 Pa.Superior Ct. at 249, 419 A.2d at 755–56, *quoting Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971). To determine this, one must look to the purpose of the search, the party who initiated it, and whether the government acquiesced in it or ratified it. *See Common-*

*wealth v. Dembo, supra*, 451 Pa. at 7–11, 301 A.2d at 693–95.

 In the present case the search proceeded in two distinct stages: that which occurred when hospital personnel withdrew appellant's blood, and that which occurred when they gave the blood to the police so that the police could test it for blood alcohol level. It is clear that hospital personnel withdrew appellant's blood for the purpose of treating him for injuries sustained during the accident. The procedure was routine, and was performed before any hospital personnel learned that the police had requested a blood sample. N.T. 1/23/84 at 44. Had nothing further occurred, therefore, the withdrawal of appellant's blood would have been a "private" search, not implicating appellant's fourth amendment rights. *See Commonwealth v. Tanchyn*, 200 Pa.Super. 148, 188 A.2d 824 (1963). When, however, Nurse Laird handed appellant's blood to Sergeant Beadling, appellant's fourth amendment rights *were* put at issue, for Nurse Laird acted on the basis of a police request, the purpose of which was to obtain evidence to be used against appellant, and she knew she was so acting, as appears from her conduct of delivering the blood only after obtaining appellant's signature on a form showing on its face that it was to be read to a suspect in the presence of a police officer.[2] Accordingly, in delivering appellant's blood to the police, Nurse Laird acted as an "instrument" or "agent" of the government. We must therefore decide whether appellant's fourth amendment rights were violated by the ensuing test for blood alcohol level performed by the police.[3]

**2.** *See supra* note 1.

**3.** We conclude that appellant has standing to contest the police test of his blood after it had been withdrawn. In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court redefined the area protected by the fourth amendment against unreasonable searches and seizures. The fourth amendment protects that in which one has an objectively reasonable expectation of privacy. *Id.* at 361, 88 S.Ct. at 516 (HARLAN, J., concurring) The Court has qualified this rule by emphasizing that "a person has no legitimate expectation of privacy in information he voluntarily turns over to the

In approaching this issue, we note that the Commonwealth seems to concede that appellant's argument that he did not consent to the sample of his blood being delivered to the police has force, for it does not argue actual consent as a constitutional basis for the withdrawal of the blood. Instead, as we have indicated, it argues that the search may be justified under the "implied consent" provision of the Vehicle Code, 75 Pa.C.S. § 1547(a). *See* Brief for Appellee at 8–11. Section 1547 provides:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a

third parties." *Smith v. Maryland,* 442 U.S. 735, 743–44, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (Where police used device that enabled them to detect all telephone numbers dialed from appellant's telephone, held: no violation of his fourth amendment rights) (citations omitted). Here, appellant did *not* voluntarily give his blood to hospital personnel. Moreover, his continuing interest in the blood sample, after it had been withdrawn, was recognized as legitimate by the hospital. Nurse Laird testified that, following hospital policy, she would have refused to give the blood sample over to the police if appellant had not signed the consent form. We note that the statute gives a hospital the authority to turn over a blood sample, whether or not a patient consents. *See* N.T. 1/23/84 at 58; 75 Pa.C.S. § 1547(j). The validity of this provision is not before us, and we intimate no view on that issue.

pedestrian required treatment at a medical facility or was killed.[4]

We have held that under this provision—more precisely, under the substantially identical predecessor of this provision—police may constitutionally conduct a chemical test of a suspect's blood, without having arrested him and without transporting him from the scene in order to conduct the test, if they have probable cause to believe that the suspect has been driving under the influence of alcohol or a controlled substance. *Commonwealth v. Quarles,* 229 Pa. Super. 363, 324 A.2d 452 (1974) (plurality). While the statute speaks in terms of "implied consent," we concluded in *Quarles* that the constitutional basis for the test could not be to imply the suspect driver's consent to the test as a condition of operating a car, for that would constitute an "unconstitutional condition." *Id.,* 229 Pa.Superior Ct. at 378–81, 324 A.2d at 460–62. Rather, we construed the term "reasonable grounds" to mean "probable cause," and concluded that the constitutional basis for the test was the existence of probable cause to believe that the suspect had been driving under the influence of alcohol or a controlled substance. *Id.,* 229 Pa.Superior Ct. at 388, 324 A.2d at 466. In *Commonwealth v. Funk,* 254 Pa.Super. 233, 385 A.2d 995 (1978), we relied on *Quarles* to hold that where the police had such probable cause, they might constitutionally conduct a test even though the suspect was not conscious and could not therefore avail himself of his statutory right to refuse the test and have evidence of such refusal admitted at his trial. *Id.,* 229 Pa.Superior Ct. at 239–41, 385 A.2d at 998–99.

**4.** Act of June 17, 1976, P.L. 162, No. 81, § 81; as amended December 15, 1982, P.L. 1268, No. 289. While Section 1547(a)(2) is new, Section 1547(a)(1) made little, if any, significant change in prior law. *See* 75 Pa.C.S. § 1547(a), Act of June 17, 1976, P.L. 162, No. 81, § 81 (superseded); 75 Pa.C.S. § 624.1, Act of April 20, 1959, P.L. 58, § 624.1, added July 28, 1961, P.L. 918, § 1 (repealed). In *Commonwealth v. Quarles, supra,* we construed the constitutional basis upon which consent to a chemical test might be implied under 75 Pa.C.S. § 624.1 (repealed). *See text infra.* Because we find that on the basis of the current version of this provision, Section 1547(a)(1), the test of appellant's blood was constitutional, we need not consider whether the test might also have been constitutional under Section 1547(a)(2).

It is important to note that there are two, *alternative*, constitutional bases for a blood test: actual consent, and implied consent. Not every case requires a decision on whether *both* bases have been satisfied. Thus, where a suspect has actually consented to the test, the test may be upheld on that basis alone, with no inquiry being made regarding implied consent. *See Commonwealth v. Arizini*, 277 Pa.Super. 27, 43–45, 419 A.2d 643, 651–52 (1980). Similarly, where the Commonwealth alleges the suspect's actual consent, and does not argue implied consent as "a basis independent of the [actual consent,]" but the trial court suppresses on the finding that there was no actual consent, we will affirm, with no inquiry regarding implied consent. *See Commonwealth v. Curtis*, 253 Pa.Super. 163, 171 n. 6, 384 A.2d 1280, 1285 n. 6 (1978). Where there is no basis for upholding the blood test under the implied consent provision, there being neither a legal arrest nor probable cause, then we must analyze whether actual consent may provide a basis for the test. *See Commonwealth v. Walsh*, 314 Pa.Super. 65, 460 A.2d 767 (1983). But where, as here, the Commonwealth relies upon implied consent, we first determine whether that claim is justified, for if it is, then we need not consider whether there was actual consent. *See Commonwealth v. Guiliano*, 274 Pa.Super. 419, 423, 418 A.2d 476, 478 (1980) (where defendant argues that results of blood test should be suppressed because actual consent invalid, court holds, citing *Commonwealth v. Quarles, supra,* and *Commonwealth v. Funk, supra,* that it "need not decide these issues for it is clear that probable cause existed to extract the blood sample").

■ We have concluded that the Commonwealth's claim of implied consent is justified, for at the time the police received the sample of appellant's blood from Nurse Laird, they had probable cause to believe that appellant had been driving under the influence of alcohol or a controlled substance. They knew that a serious accident had occurred, causing extensive injuries; Sergeant Beadling's attempt to communicate with appellant was unsuccessful because of

appellant's "semiconscious" state; both the sergeant and Nurse Laird had smelled alcohol on appellant's breath; and the continuing investigation at the scene after appellant was transported to the hospital had revealed evidence of recent marijuana use in appellant's car. *Compare Commonwealth v. Guiliano, supra* 274 Pa.Super. at 424, 418 A.2d at 477 (blood test upheld on basis of probable cause where "[a]ppellant's pupils, eyes, and speech all suggested consumption of alcohol [and] . . . a serious one-car accident had occurred. . . ."); *see also Commonwealth v. Funk, supra* 254 Pa.Super. at 238, 385 A.2d at 998. We note, moreover, that appellant concedes that the police had probable cause. *See* Brief for Appellant at 23.[5]

We believe that to the extent our earlier decisions seem to differ from our decision here, they are distinguishable. Here, the test by police was conducted after appellant had been transported to the hospital for purposes of treatment, and after the blood had been withdrawn by hospital personnel. In *Commonwealth v. Quarles, supra,* the police drove the defendant twenty-two miles from the scene to the police station in order to conduct the breathalyzer test. We held that in order to transport a suspect *for the purpose of conducting a test,* probable cause does not suffice; rather, the police must place the suspect under legal arrest. *See id.,* 229 Pa.Superior Ct. at 389–90, 324 A.2d at 466–67. We reasoned that a higher standard than probable cause was necessary because of the greater intrusion involved in transporting a suspect from the accident scene. *Id.,* 229 Pa.Superior Ct. at 387, 324 A.2d at 465. *See also Commonwealth v. Kelly,* 235 Pa.Super. 299, 301, 341

5. Because we find that the police had probable cause, appellant's reliance on *Commonwealth v. Walsh, supra,* is misplaced. In that case this court noted that the Commonwealth (appellant there) conceded that "there was no probable cause for arrest or to believe that appellee was intoxicated[,]" and that it therefore "relie[d] on appellee's consent to establish the propriety of the search." Because we agreed with the Commonwealth that the record did not show "that there was probable cause for arrest *or for a blood test search[,]*" we proceeded to analyze whether appellee's actual consent was valid. *Id.* 314 Pa.Super. at 72–73, 460 A.2d at 770 (emphasis added).

A.2d 141, 143 (1975) (distinction in *Quarles* rests upon "[o]ur oft-stated concerns for the integrity of the individual's control over his person. . . ."). In *Commonwealth v. Funk, supra,* we applied the probable cause standard to uphold a blood test conducted at the hospital, at police request, upon an unconscious suspect, but in doing so, we did not comment on the significance of the fact that prior to the test, the defendant had been transported to the hospital. In *Commonwealth v. Hlavsa,* 266 Pa.Super. 602, 405 A.2d 1270 (1979), we held, over dissent, that where blood was withdrawn from an unconscious suspect at the hospital, at police request, the trial court had properly suppressed the results of the test because there had been no legal arrest. *But see id.,* 266 Pa.Superior Ct. at 607, 405 A.2d at 1272 (SPAETH, J., dissenting) (where defendant had been transported from accident scene to obtain medical treatment, not to have test administered; where "[n]o detention . . . was involved, and the scope of the seizure was limited;" and where police had probable cause, blood test should be considered constitutional). Here, as was not the case in *Quarles,* medical personnel transported appellant in order to treat him; the police did not transport him in order to test him. Here also, as was not the case in *Hlavsa,* medical personnel withdrew appellant's blood to facilitate his treatment, not because the police requested that they do so. *See Commonwealth v. Gotto,* 306 Pa.Super. 434, 441–42, 452 A.2d 803, 806–07 (1982) (where hospital personnel withdrew blood for treatment purposes, subsequent police decision to test blood sample provided by hospital, rather than administer breathalyzer test, was "harmless error" for the blood test "subjected [the defendant] to no further intrusion or search [footnote omitted]"). *And see Commonwealth v. Tanchyn, supra.* The test at issue here constituted *less* of an intrusion than that which might constitutionally have occurred at the accident scene, on the basis of probable cause, for the police neither invaded, nor seized and detained, appellant's person in order to administer the test. We see no reason why the existence of probable cause, which would unquestionably suffice as a constitutional ba-

sis for a test administered at the scene, may not also suffice as a constitutional basis for a test administered at the hospital. *See Commonwealth v. Funk, supra.* Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress.

–2–

Appellant next argues that the trial court erred in not allowing him to call Gary McMillan, the driver of the other car, as a witness. This argument is without merit.

In *Commonwealth v. Bellacchio,* 296 Pa.Super. 468, 442 A.2d 1147 (1982), we held that the trial court properly refused to allow the defendant to call as a witness a participant in the burglary for which the defendant was on trial. The trial court had been advised in chambers both by the potential witness and his attorney that the witness would invoke his privilege under the fifth amendment if he was called to testify. We held:

> A witness should not be placed on the stand solely for the purpose of having him exercise his privilege against self-incrimination before the jury. "If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege..." *United States v. Lacouture,* 495 F.2d 1237, 1240 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974), quoting *United States v. Johnson,* 488 F.2d 1206, 1211 (1st Cir.1973). *See also: Bowles v. United States,* 142 U.S.App.D.C. 26, 32, 439 F.2d 536, 542 (1970), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971); *Commonwealth v. Greene,* 445 Pa. 228, 231–232, 285 A.2d 865, 867 (1971); *Commonwealth v. Pritchard,* 270 Pa.Super. 461, 468, 411 A.2d 810, 814 (1979); *Commonwealth v. Hackett,* 225 Pa.Super. 22, 24 n. 2, 307 A.2d 334, 335 n. 2 (1973).

*Id.,* 296 Pa.Superior Ct. at 474–75, 442 A.2d at 1150.

*See also Commonwealth v. Greene,* 445 Pa. 228, 285 A.2d 865 (1971); *Commonwealth v. Davis,* 308 Pa.Super. 398, 454 A.2d 595 (1982). Before a trial court may excuse a witness, it must be satisfied that if called, the witness would indeed exercise the privilege. *See Commonwealth v. Fava,* 294 Pa.Super. 73, 439 A.2d 756 (1982) (Opinion in support of reversal) *aff'd* 503 Pa. 365, 469 A.2d 597 (1983).

■ Here, there can be no question that Gary McMillan would have exercised the privilege. At a hearing held in chambers after counsel for appellant informed the court of his intention to call McMillan, the following colloquy took place:

MR. KALKBRENNER: [Assistant District Attorney] Your Honor, I would object to that proposal. Mr. Josel is here. He is the attorney of record for Gary McMillen. He has informed all of us off the record previously that Mr. McMillen does, in fact, intend to take the Fifth Amendment if he is called as a witness for either party in this case.

MR. JOSEL: That is correct. I advised my client to remain silent, not to participate in this trial, if he was subpoenaed, to rely on the Fifth Amendment, not to testify.

THE COURT: Mr. Josel, are there charges presently pending against your—

MR. JOSEL: Frivolous, but they are pending.

N.T. 1/23/84 at 13.

As the only purpose in calling McMillan, after this exchange, would have been the impermissible one of allowing the jury to draw adverse inferences from McMillan's assertion of the privilege, the trial court did not abuse its discretion in refusing to allow him to testify. *See Commonwealth v. Bellacchio, supra.*

–3–

■ Appellant next argues that the verdict was against the weight of the evidence. In his post-trial motion, filed February 6, 1984, appellant framed the issue as follows:

The verdict of guilty of homicide by vehicle, driving while under the influence of alcohol, driving while the amount of alcohol by weight in the blood is .10% or greater, homicide by vehicle while driving under the influence, involuntary manslaughter and recklessly endangering another person was against the weight of the evidence. Motion in Arrest of Judgment and For a New Trial, ¶ 2. We will not consider this argument. In *Commonwealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (1983) (*en banc*), we held:

> ... effective sixty days from today, a post-verdict motion, either that "the evidence was insufficient to support the verdict," or that "the verdict was against the weight of the evidence," will preserve *no* issue for appellate review unless the motion goes on to specify *in what respect* the evidence was insufficient, or *why* the verdict was against the weight of the evidence.

*Id.*, 315 Pa.Superior Ct. at 259–60, 461 A.2d at 1270. Appellant's post-trial motion does not state why the verdict was against the weight of the evidence. Accordingly, he has not preserved this issue for appellate review.

–4–

■■■ Appellant argues finally that the mandatory sentencing provisions of 75 Pa.C.S. § 3735 [6], which were applied to him, are unconstitutional in that they violate separation of powers by vesting discretionary sentencing power in the district attorney rather than the sentencing judge; they violate due process; they deny appellant equal protection;

---

**6.** Act of December 15, 1982, P.L. 1268, No. 289, § 11, 75 Pa.C.S. § 3735. Section 3735 provides:

**(a) Offense defined.**—Any person who unintentionally causes the death of another person as the direct result of a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the third degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years.

**(b) Applicability of sentencing guidelines.**—The sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory penalty of this section.

and they constitute cruel and unusual punishment.[7] This argument is without merit.

In *Commonwealth v. Hernandez*, 339 Pa.Super. 32, 488 A.2d 293, 296 (1985), we considered a constitutional challenge to the validity of 75 Pa.C.S. § 3735 on identical grounds to those raised here. We there held that the mandatory sentencing provisions do not violate separation of powers, as the legislature may properly enact statutes that mandate a specific penalty for defined criminal conduct; that "due process of law is not violated when courts accede to legislative authority to frame a coherent statutory scheme for the administration of sentencing for certain criminal offenses;" that equal protection is not denied where there is no suspect class and "[t]he deterrence of the misuse of alcohol by drivers is a legitimate governmental interest and the imposition of a mandatory minimum sentence bears a rational relationship to that goal;" and that the mandatory minimum does not constitute cruel and unusual punishment as it does not "impose a penalty so out of proportion to the crimes as to shock a balanced sense of justice." *Id.*, 339 Pa.Superior Ct. at 38–44, 488 A.2d at 297–299. *See also Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985) (Supreme Court holds that imposition of

---

7. The Commonwealth argues that appellant has waived appellate consideration of this claim for failure to include it in post-trial motions. Brief for Appellee at 17. While it is true that issues not preserved at each stage of review by specific allegations of error are waived and cannot be raised on appeal, *see Commonwealth v. Humphreys*, 267 Pa.Super. 318, 406 A.2d 1060 (1979), we require only that the issue be raised at the earliest possible time. *Commonwealth v. Jenkins*, 273 Pa.Super. 227, 417 A.2d 251 (1979). Here, that time was not when post-trial motions were filed, as the Commonwealth argues, for appellant had not then been sentenced under the provision he claims is unconstitutional. *See Commonwealth v. Hernandez*, 339 Pa.Super. 32, 488 A.2d 293, 296 (1985) (challenge to constitutionality of mandatory sentencing provisions of 75 Pa.C.S. § 3735 properly preserved when raised in motion to modify sentence.) It is true that appellant did not raise this issue in the Motion to Modify Sentence that he filed *pro se*. He did, however, raise the issue in his "Concise Statement of Matters Complained of On Appeal," which was his first opportunity to do so with the aid of counsel. As the issue was considered on the merits by the trial court, we consider it here. *See* Slip op. of tr. ct. at 7–11.

mandatory minimum sentence for visible possession of firearm during commission of crime, 42 Pa.C.S. § 9712, does not violate due process).

Affirmed.