634 A.2d 662

COMMONWEALTH of Pennsylvania, Appellant,

v.

John A. FRANZ.

Superior Court of Pennsylvania.

Argued Oct. 19, 1993.

Filed Dec. 1, 1993.

James K. Vogel, Asst. Dist. Atty., Erie, for Com., appellant.

James R. Dailey, Erie, for appellee.

Before CIRILLO, FORD ELLIOTT and CERCONE, JJ.

CIRILLO, Judge:

The Commonwealth appeals from an order entered in the Court of Common Pleas of Erie County granting appellee John A. Franz's motion to suppress blood test results. We affirm.

Trooper Joseph P. DiRaimo of the Pennsylvania State Police was called to the scene of a two car accident on May 3, 1992. DiRaimo's investigation revealed that appellee Franz's vehicle had crossed the dividing line and had crashed head-on into a car driven by Thomas Connors, who died in the crash. Franz was taken immediately to St. Vincent's Hospital for medical treatment.

DiRaimo went to the hospital hoping to interview Franz, but was unable to as Franz was on his way to surgery. At that point, DiRaimo made a request of hospital personnel to take a sample of Franz's blood. DiRaimo was told that blood had already been drawn for medical reasons.

Several days later DiRaimo phoned the hospital records department to secure the blood test results. He was informed that, because Franz was still a patient in the hospital, his records were being kept on the floor of the hospital where Franz's room was located. DiRaimo returned to the hospital, located the fifth floor supervisor, and requested Franz's blood test results. The supervisor told DiRaimo that the result showed a blood serum of .171%. Back at the police barracks, DiRaimo was told how to convert this result to obtain a blood alcohol reading, which resulted in a .141% reading. Franz was subsequently charged with driving under the influence of alcohol, homicide by vehicle, and homicide by vehicle while driving under the influence of alcohol.

A few weeks prior to Franz's preliminary hearing, DiRaimo again returned to the hospital. He requested and received the actual written record of Franz's blood test from the medical records department. At no time did DiRaimo secure a search warrant for this information.

The suppression court found that, through DiRaimo's conduct, there was significant state action involved in obtaining

the blood test. Consequently, by order of the Honorable Shad Connelly, the results of Franz's blood test were suppressed. The Commonwealth appeals from that suppression order. We are asked to decide the following issue:

> Whether the taking and testing of Franz's blood and the securing of the results was a private search and seizure not subject to the protection of the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.[1]

On appeal from a motion to suppress, we only review whether the record supports the suppression court's factual findings and whether the court's legal conclusions drawn from the facts are in error. *Commonwealth v. Medley*, 531 Pa. 279, 612 A.2d 430 (1992); *Commonwealth v. Merkt*, 411 Pa.Super. 127, 600 A.2d 1297 (1992). Here, since there is no dispute as to the facts, we decide only whether the suppression court erred in its application of the law.

In deciding whether state action was involved in securing the blood sample in the instant case, we are guided by the following statement of the current law in Pennsylvania:

> The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures. The administration of a blood test is a search within the meaning of the Fourth Amendment if it is performed by an agent of the government. *Commonwealth v. Hipp*, 380 Pa.Super. 345, 551 A.2d 1086 (1988). The fourth amendment 'proscribes only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' *Commonwealth v. Cieri*, 346 Pa.Super. 77, [84,] 499 A.2d 317, 321 (1985). To determine whether a search was private, it must be determined wheth-

---

1. The Commonwealth, in its appellate brief, has failed to set forth a statement of question(s) involved. It is clear from the argument portion of the Commonwealth's brief, however, that the issue stated above, which we have taken from appellee Franz's brief, is an accurate statement of the issue on appeal.

er the individual who conducted the search must be regarded as an instrument or agent of the state. *Id.* This in turn is determined by looking at the purpose of the search, the party who initiated it, and whether the government acquiesced in it or ratified it. *Id.*

*Commonwealth v. Ellis,* 415 Pa.Super. 220, 223, 608 A.2d 1090, 1091 (1992), *appeal denied,* 533 Pa. 623, 620 A.2d 489 (1993).

Here, it is undisputed that the blood was taken at the hospital's initiative, before the arrival of the trooper. It is also undisputed that the results of the test were not volunteered to the trooper, but were given only at the trooper's request. Since the search here proceeded in two separate stages—that which occurred when hospital personnel withdrew Franz's blood, and that which occurred when they gave the results to Trooper DiRaimo—we must analyze them separately. In *Ellis, supra,* we stated: "[Where] police requested that a blood test be taken *or sought information regarding the test results* ... we have held that state action was involved...." *Id.* at 224, 608 A.2d at 1091 (emphasis added); *see Commonwealth v. Cieri, supra; Commonwealth v. Hipp, supra; Commonwealth v. Danforth,* 395 Pa.Super. 1, 576 A.2d 1013 (1990), *appeal granted* 526 Pa. 647, 585 A.2d 467 and *aff'd* in *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992).

■ At the suppression hearing DiRaimo testified that, because of the "serious nature" of the accident, he requested that hospital personnel draw blood for testing purposes. He further testified that the staff had replied, "some blood was already drawn for medical purposes." When asked if the blood was *tested* for blood alcohol as a normal course of hospital business or whether it was tested at DiRaimo's request, DiRaimo stated that he did not know.[2] Regardless of

---

**2.** It is at least arguable, and could be inferred from DiRaimo's testimony, that the hospital's actual *testing* of the blood resulted from DiRaimo's request. He testified as follows:

Q. You mean to say, trooper, are you telling me that you merely went to the hospital and said "draw blood" and didn't tell them why?
A. I said, "Because of the—the serious nature of the accident I'm going to need a blood test or blood drawn for testing purposes."
Q. For blood alcohol—

this uncertainty (the Commonwealth called no one from the hospital to testify), it seems clear that, at the very least, the blood was drawn for medical purposes prior to DiRaimo's request. We find, therefore, that the initial taking of Franz's blood, which was not at the request of any government official, did not implicate Franz's Fourth Amendment rights. *See Commonwealth v. Urbanski,* 426 Pa.Super. 505, 512, 627 A.2d 789, 793 (1993) (blood test did not trigger constitutional concerns where test was performed by medical personnel; staff was not acting as a police agent when the test was ordered); *Ellis,* 415 Pa.Super. at 224, 608 A.2d at 1091–92 ("[W]here, as here, the hospital personnel take the blood test for their own reasons and then freely volunteer the results to a police officer, the fourth amendment is not implicated because the necessary government action is missing."); *Hipp,* 380 Pa.Super. at 353–54, 551 A.2d at 1090 ("The blood test . . . was performed prior to the arrival of any officer and was conducted as a routine part of the emergency treatment . . . and not at the request of any government official. Thus, the medical purposes blood test itself did not violate appellant's constitutional rights."); *Cieri,* 346 Pa.Super. at 85, 499 A.2d at 321 (where it was clear that hospital personnel withdrew appellant's blood for purpose of treating him for injuries, the procedure was routine and was performed before any officer requested a sample, the withdraw of blood was a private search and the Fourth Amendment did not apply at this stage).

Had nothing further occurred, the withdrawal of Franz's blood would have been a private search, and his Fourth Amendment rights would not have been triggered. When, however, the hospital gave the blood test results to Trooper DiRaimo, Franz's Fourth Amendment rights *were* put at issue. While it is unclear whether the hospital staff performed the blood alcohol test at DiRaimo's request, we are certain that the *results* of the test were released to DiRaimo at his request. Thus, when the staff acted on the basis of Trooper DiRaimo's request, the purpose of which was to

A. Correct.

obtain evidence to be used against Franz, the hospital personnel acted as an "instrument" or "agent" of the government. *See Cieri, supra* (appellant's Fourth Amendment rights were put in issue when, at police officer's request, a hospital nurse handed appellant's blood to police officer; in delivering appellant's blood to the police, nurse acted as an "instrument" or "agent" of the government).

We must now decide whether Franz's Fourth Amendment rights were violated when DiRaimo obtained the test results. The Fourth Amendment prohibits only those searches which are unreasonable and, as a general rule, a search or seizure is not reasonable unless conducted pursuant to a valid search warrant upon a showing of probable cause. *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992); *Danforth, supra; see Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Even if the search may be performed without a warrant, the search still must be based on probable cause to believe that the person has violated the law. *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); *see Kohl, supra.*

Here, DiRaimo, who at no time secured a warrant for the test results, lacked probable cause to believe that Franz had been driving while under the influence of alcohol. Rather, at the suppression hearing it was revealed that the basis for DiRaimo's request for both the blood test and the test results were simply due to the severity of the accident. DiRaimo's reasoning appears to follow from the "implied consent" provisions of 75 Pa.C.S.A. § 1547(a)(2).[3] Pennsylvania appellate courts, however, have ruled tests administered solely pursuant to this statute violate the Fourth Amendment. *See Kohl, supra* (drawing of blood samples pursuant to implied consent law from defendants involved in a car accident violated the

3. The implied consent provisions of § 1547(a)(1) and § 1547(a)(2) dispense with the need to obtain a warrant. Section § 1547(a)(2) dispenses with the probable cause requirement as well. Under this section, an officer must only have reasonable grounds to believe that the operator of a car was involved in a accident where a fatality has occurred or in which treatment at a medical facility was required. *See Kohl,* 532 Pa. at 167, 615 A.2d at 315–16.

Fourth Amendment where they were not under arrest, circumstances did not establish probable cause to arrest them, and police officers had not observed any evidence that they had been driving under the influence of alcohol); *Danforth, supra* (officer who did not suspect intoxication on part of motorist did not have probable cause to have blood sample taken; test authorized by implied consent law violates the Pennsylvania Constitution's restraints against unreasonable searches and seizures).

"Probable cause exists when an officer has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man to believe that the person seized has committed a crime." *Kohl,* 532 Pa. at 166, 615 A.2d at 315. It is clear that DiRaimo had no probable cause to believe that Franz was under the influence of alcohol at the time of the accident. Basing his search merely on the "severity of the accident" is insufficient to warrant a search based on probable cause.[4] Accordingly, we find no error in the suppression court's conclusion that the results of Franz's blood test results must be suppressed.

Order affirmed.

---

4. In cases where the ordered tests/test results have been deemed permissible searches, probable cause existed, thus distinguishing them from the case at hand. *See Hipp, supra* (even if officer had *requested* the results of the medical purposes blood test, such a "search" would have been reasonable under the circumstances, such "circumstances" being that the investigating officer noted that appellant's eyes were bloodshot, his speech slurred, and had a strong odor of alcohol on his breath); *Cieri, supra* (at the time police received the sample of appellant's blood, they had probable cause to suspect driving under the influence; both the officer and the nurse had smelled alcohol on appellant's breath).