580 A.2d 1362

**COMMONWEALTH of Pennsylvania**

v.

**Stephen Roy CARR, Appellant.**

Superior Court of Pennsylvania.

Argued March 8, 1990.

Filed Sept. 24, 1990.

---

Michael George, Gettysburg, for appellant.

Roy A. Keffer, Asst. Dist. Atty., Gettysburg, for Com., appellee.

Before WIEAND, TAMILIA and POPOVICH, JJ.

WIEAND, Judge:

In this appeal from a sentence of life imprisonment imposed for murder of the first degree, the principal issue is whether the trial court·erred when it disallowed evidence of the defendant's psychosexual history to show the likelihood of a killing in the heat of passion aroused by defendant's observation of two women engaged in homosexual lovemaking.

On May 13, 1988, Claudia Brenner and Rebecca Wight were hiking along the Appalachian Trail in Adams County, when they found an appropriate campsite and stopped for the night. There, they were resting and engaging in lesbian lovemaking when Claudia Brenner was shot in the right arm. After a short pause, additional shots were fired, as a result of which Brenner was struck four additional times in and about her face, neck and head. Rebecca Wight ran for cover behind a tree and was shot in the head and back. Brenner attempted to help Wight, who was unable to walk, but was unable to rouse her. Brenner thereupon went for help, but by the time help arrived, Wight was dead. Suspicion subsequently focused on Stephen Roy Carr. He was arrested and taken into custody on a fugitive warrant from the State of Florida and made statements which incriminat-

ed himself in the shooting. He was subsequently tried non-jury before the Honorable Oscar Spicer and found guilty of murder in the first degree.

Carr defended at trial on grounds, inter alia, that he had shot Brenner and Wight in the heat of passion caused by the serious provocation of their nude homosexual love-making. In support of this defense and to show the existence of passion, Carr offered to show a history of constant rejection by women, including his mother who may have been involved in a lesbian relationship, sexual abuse while in prison in Florida, inability to hold a job, and retreat to the mountains to avoid further rejection. This was relevant, he contended, to show that he was impassioned when provoked by the "show" put on by the women, including their nakedness, their hugging and kissing and their oral sex. The trial court refused to allow evidence of Carr's psychosexual history, finding it irrelevant.

The crime of voluntary manslaughter is defined by the Pennsylvania Crimes Code as follows:

A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation....

18 Pa.C.S. § 2503(a). In *Commonwealth v. Copeland*, 381 Pa.Super. 382, 554 A.2d 54 (1988), the Court said:

The passion which will reduce an unlawful killing to voluntary manslaughter must be caused by legally adequate provocation. *Commonwealth v. Flax*, 331 Pa. 145, 155, 200 A. 632, 637 (1938). The test for determining the existence of legally adequate provocation is an objective test. *Commonwealth v. Miller* 473 Pa. 398, 399, 374 A.2d 1273, 1274 (1977); *Commonwealth v. Stasko*, 471 Pa. 373, 384, 370 A.2d 350, 356 (1977); *Commonwealth v. McCusker*, 448 Pa. 382, 389, 292 A.2d 286, 289 (1972).

*Id.* 381 Pa.Super. at 389, 554 A.2d at 57.

In making the objective determination as to what constitutes sufficient provocation reliance may be placed upon

the cumulative impact of a series of related events. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was "incapable of cool reflection."

*Commonwealth v. McCusker*, 448 Pa. 382, 389–390, 292 A.2d 286, 290 (1972). See also: *Commonwealth v. Voytko*, 349 Pa.Super. 320, 326, 503 A.2d 20, 23 (1986). *"If and when* sufficient provocation is found, then the focus of inquiry shifts to the defendant's response to that provocation[.]" *Commonwealth v. Whitfield*, 475 Pa. 297, 304, 380 A.2d 362, 366 (1977) (emphasis in original).

If sufficient provocation exists, the fact finder must also determine whether the defendant actually acted in the heat of passion when he committed the homicide and thus whether the provocation led directly to the killing or whether there was sufficient "cooling" period so that a reasonable man would have regained his capacity to reflect.

*Commonwealth v. Rivers*, 383 Pa.Super. 409, 417, 557 A.2d 5, 9 (1989), citing *Commonwealth v. Galloway*, 336 Pa.Super. 225, 485 A.2d 776 (1984).

The sight of naked women engaged in lesbian lovemaking is not adequate provocation to reduce an unlawful killing from murder to voluntary manslaughter. It is not an event which is sufficient to cause a reasonable person to become so impassioned as to be incapable of cool reflection. A reasonable person would simply have discontinued his observation and left the scene; he would not kill the lovers. See and compare: *State v. Volk*, 421 N.W.2d 360 (Minn. App.1988) (defendant's revulsion from deceased's homosexual advances not sufficient legal provocation to elicit heat of passion response; person of ordinary self-control under like circumstances would have left scene); *State v. Latiolais*, 453 So.2d 1266 (La.App.1984) (defendant's excessive hostility toward and fear of homosexuals does not render victim touching defendant's leg sufficient legal provocation); *State v. Ritchey*, 223 Kan. 99, 573 P.2d 973 (1977) (de-

ceased's vocal and physical homosexual advances, which were nonviolent and nonthreatening, were insufficient provocation). Whatever a person's views about homosexuality, the law does not condone or excuse the killing of homosexuals any more than it condones the killing of heterosexuals. Similarly, it does not recognize homosexual activity between two persons as legal provocation sufficient to reduce an unlawful killing of one or both of the actors by a third person from murder to voluntary manslaughter.

A trial court must make an initial determination whether sufficient evidence has been presented of serious provocation. See: *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983) (where evidence does not support finding of manslaughter, court need not submit issue to jury); *Commonwealth v. Dews*, 429 Pa. 555, 239 A.2d 382 (1968) (where no evidence of manslaughter, it is proper to refuse to submit manslaughter issue to jury). In the instant case, the judge was both court and jury. Appellant was permitted to show the nature of the activities in which his victims were engaged when he came upon them in the woods. "In a provocation defense, the actions of the victim establishing provocation are relevant. Those are the victim's actions on the [day] in question because the provocation must lead *directly* to the killing." *Commonwealth v. Rivers, supra* 383 Pa.Super. at 418, 557 A.2d at 9 (emphasis in original). After it had been determined that these activities were inadequate to provoke a heat of passion response, however, appellant's rejection by women and his mother's sexual preference were irrelevant. Appellant's history of misfortunes are not events which are in any way related to the events which he claims provoked him on May 13, 1988. An accused cannot, by recalling some past injury or insult, establish a foundation for a manslaughter verdict. *Commonwealth v. Dews, supra* 429 Pa. at 559, 239 A.2d at 385. See also: *Commonwealth v. Gelfi*, 282 Pa. 434, 128 A. 77 (1925); *Commonwealth v. Russogulo*, 263 Pa. 93, 106 A. 180 (1919). The trial court did not err when it excluded evidence of appellant's psychosexual history.

■ Appellant also contends that his waiver of the right to remain silent following arrest on a fugitive warrant was involuntary because he did not know that he was to be questioned about the shooting of Brenner and Wight. Therefore, he argues, the trial court erred when it refused to suppress his incriminatory statements.

In *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), [the Supreme] Court held that a valid waiver of *Miranda* rights requires that the suspect have an awareness of the general nature of the transaction giving rise to the investigation. The rationale of this holding was that it is only when such knowledge is possessed by a suspect that he can be said to understand the consequences of yielding the right to counsel. "It is a far different thing to forego a lawyer where a traffic offense is involved than to waive counsel where first degree murder is at stake." *Commonwealth v. Collins*, 436 Pa. 114, 121, 259 A.2d 160, 163 (1969) (plurality opinion). It is clear from *Richman*, however, that the suspect need not have knowledge of the "technicalities" of the criminal offense involved; rather, it is necessary only that he be aware of the "transaction" involved. *Commonwealth v. Richman*, 458 Pa. at 175, 320 A.2d at 355; see also *Commonwealth v. Jones*, 460 Pa. 223, 331 A.2d 658 (1975); *Commonwealth v. McKinney*, 453 Pa. 10, 306 A.2d 305 (1973); *Commonwealth v. McIntyre*, 451 Pa. 42, 301 A.2d 832 (1973); *Commonwealth v. Boykin*, 450 Pa. 25, 298 A.2d 258 (1972); *Commonwealth v. Swint*, 450 Pa. 54, 296 A.2d 777 (1972). Neither does the *Richman* holding establish a "fifth *Miranda* warning"; that is, there is no prophylactic requirement that the interrogating officers affirmatively provide information to the suspect as to the crime under investigation. *Commonwealth v. Jacobs*, 445 Pa. 364, 284 A.2d 717 (1971); *Commonwealth v. Cooper*, 444 Pa. 122, 297 A.2d 108 (1971), both cited in *Richman*. Where, however, the defendant has not been furnished with such information and a pre-trial challenge concerning the validity of a confession

is made on this ground, the Commonwealth must prove by a preponderance of the evidence that the defendant knew of the occasion for the interrogation. Cf. *Miranda v. Arizona, supra,* 384 U.S. [436] at 475, 86 S.Ct. 1602 [at 1628], 16 L.Ed.2d [694] at 724 [ (1966) ]. This burden may sometimes be satisfied by the establishment of circumstances attending the interrogation, such as the prior statements of the suspect, see *Commonwealth v. Cooper, supra,* or the fact that interrogation follows hard upon the criminal episode and there is no circumstance lending ambiguity to the direction and purpose of the questioning.

*Commonwealth v. Dixon,* 475 Pa. 17, 22–23, 379 A.2d 553, 556 (1977) (footnotes omitted). See also: *Commonwealth v. Moss,* 518 Pa. 337, 347 n. 1, 543 A.2d 514, 519 n. 1 (1988); *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983); *Commonwealth v. Harris,* 359 Pa.Super. 581, 519 A.2d 505 (1986); *Commonwealth v. Gotto,* 306 Pa.Super. 434, 452 A.2d 803 (1982); *Commonwealth v. Reaves,* 279 Pa.Super. 581, 421 A.2d 351 (1980); *Commonwealth v. Hart,* 266 Pa.Super. 190, 403 A.2d 608 (1979).

In *Commonwealth v. Moss, supra,* however, the Supreme Court observed:

We did not hold in *Dixon,* and we have never held, that a suspect must be informed of each and every crime under investigation. On the contrary, we have consistently held that the Commonwealth, in meeting its burden of proving a waiver was knowing and intelligent, may establish the circumstances attending the interrogation and the lack of ambiguity as to the questioning's direction and purpose.

*Id.* 518 Pa. at 347 n. 1, 543 A.2d at 519 n. 1.

In the instant case, the evidence demonstrated that there had been no ambiguity about the direction and purpose of the interrogation. After appellant had formally waived his *Miranda* rights, he was asked to account for his whereabouts after he left Florida in December, 1986. He described living in the woods and, when asked how he had survived, said that he had fished, trapped and hunted with

his .22 caliber rifle. He volunteered that his rifle had been stolen, along with other belongings, on the afternoon of May 13 while he was napping along the trail. When asked if he had seen anyone on the trail, Carr replied that he had seen two girls kissing near his shelter on the morning of May 13. He said that he spoke with one of them, after which he and the girls went their separate ways. When police told Carr that the items which he had described as missing were found at the scene of a murder, he began crying and said "Why does this happen to me." Police then told appellant that he had been seen at John Golden's house on the morning of May 14 and that there had been talk of the killing in the woods. Carr denied that there had been talk of the two girls being shot in the woods. He said that he first had learned of the shooting on the six o'clock news later that evening. When police told Carr that one of the girls had lived through the attack and reported seeing him along the trail on the afternoon of May 13, carrying his rifle across his shoulders, Carr again began crying and stated, "If I tell you what really happened, you'll put me away for a long time. I should have run." When asked if the shooting was an accident, Carr replied that he thought he was shooting at a deer until he heard screams.

Carr also led police to the location where he had hid his rifle. Upon return to the barracks, Carr was arrested for murder. After arraignment and while being transported to Adams County, Carr told police that he had known they were looking for him because he had heard that they were showing his picture to people on May 17.

It is patently clear, therefore, that appellant knew he was a suspect in the shooting on May 13, 1988 and that he was being questioned about it. After being arrested, the interrogation was almost exclusively about the shooting and not about his fugitive status in Florida. "To find under these circumstances that [Carr] was unaware of the general nature of the transaction giving rise to his questioning would be tantamount to treating as fact that which is patently hypothesis and fantasy." *Commonwealth v. Travaglia, supra* 502 Pa. at 487, 467 A.2d at 294.

■ Finally, appellant argues that the trial court erred in refusing him an *in camera* review of the Commonwealth's file to determine whether the District Attorney had complied with his discovery requests. However, "[a]n in camera inspection of the Commonwealth's file is not required unless there is reason to believe that evidence favorable to the defense will be revealed." *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). See also: *Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438 (1985). In the instant case, appellant did not show and, indeed, did not allege that the police file contained exculpatory material. Moreover, he concedes on appeal that "the defense is unable to indicate what items should have further been disclosed." Since appellant is unaware of any exculpatory information which has been withheld from him and has failed to show that he was prejudiced in any way, we conclude that appellant was not deprived of adequate pretrial discovery.[1]

The judgment of sentence is affirmed.

---

1. The trial court did not err when it refused to allow pretrial discovery pertaining to other physical or sexual interaction between Brenner and Wight.