J-S20018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT A. MAIER, | |
| Appellant | No. 970 WDA 2014 |

Appeal from the Judgment of Sentence Entered May 2, 2013
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0000195-2012

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED MAY 20, 2015**

Appellant, Robert A. Maier, appeals *nunc pro tunc* from the judgment of sentence entered on May 2, 2013, following his convictions of first-degree murder and possessing a firearm with an obliterated serial number. We affirm.

In November of 2011, Appellant and his girlfriend, Ellen Rose ("Ellen"), had been in a romantic relationship for approximately twenty-three years. N.T., 3/22/13, at 224. The victim in this matter ("Victim") was Ellen's adult son, thirty-one-year-old Matthew Rose. *Id*. at 52. Victim and his wife Brandi Rose ("Brandi") had two young children. *Id*. at 150. Victim and Brandi were estranged due to Victim's substance abuse, but they were attempting to reconcile. *Id*. at 154. Appellant was upset about Victim's drug use, and he also suspected that Victim told the police that Appellant

was selling marijuana. *Id*. at 237-239. On Friday, November 25, 2011, Brandi learned that her daughter made an allegation that Brandi's nephew had touched her inappropriately. *Id*. at 155. Brandi's mother contacted the police and Children and Youth Services ("CYS"). *Id*. at 156. Later that day, there was a family meeting at Ellen's house about the child's allegations. *Id*. at 157. Ellen, Appellant, Victim and Brandi, their two children, and some family friends were at the family meeting. *Id*.

The next day, Saturday, November 26, 2011, CYS came to Ellen's home and interviewed Brandi, Victim, and the child who made the complaint. *Id*. at 161. After the CYS interviews, Appellant arrived at Ellen's house intoxicated at approximately 2:30 p.m. N.T., 3/22/13, at 170. Appellant, Brandi, and Victim convened in the kitchen. *Id*. Brandi and Appellant were talking while Victim read a newspaper. *Id*. at 176. Appellant began commenting on Brandi's decision to reconcile with Victim, and Appellant shared his belief that Victim informed the police about Appellant's marijuana dealing. *Id*. at 177-178. Victim gave no response and continued to read the newspaper. *Id*. Appellant then pulled out a handgun and pointed it at Victim. *Id*. at 178. Appellant took several steps toward Victim and fired the weapon at Victim. *Id*. at 179. The bullet struck Victim in the side, and Victim and Brandi fled outside the house. *Id*.

Appellant followed Victim and Brandi outside, and while Victim was moving toward a fence, Appellant shot him in the back. *Id*. at 185. Despite having been shot twice, Victim attempted to climb the fence, and Appellant

fired a third shot striking Victim in the lower back causing him to fall. *Id*. at 186-188. The first shot pierced Victim's liver, and the third shot pierced the liver and cut a furrow through Victim's heart. N.T., 3/25/13, at 191-194. Victim died as a result of the third gunshot wound. *Id*. Appellant was arrested later that day, and police recovered the murder weapon from his truck. N.T., 3/22/13, at 89.[1]

On March 27, 2013, following a jury trial, Appellant was found guilty of first-degree murder and possession of a firearm with an obliterated serial number. On May 2, 2013, Appellant was sentenced to an aggregate term of life in prison. Appellant filed a timely post-sentence motion on May 7, 2013, and Appellant was also granted permission to file a supplemental post-sentence motion. On August 19, 2013, the trial court denied Appellant's post-sentence motions.

Appellant filed a notice of appeal with this Court; however, we dismissed the appeal on February 10, 2014, due to Appellant's failure to file a brief. On April 21, 2014, Appellant filed a timely petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, seeking the reinstatement of his direct appeal rights *nunc pro tunc*. In an order filed on May 12, 2014, the PCRA court reinstated

---

[1] The ballistics evidence matched the shell casings found at the crime scene to the handgun found in Appellant's truck. N.T., 3/26/13, at 10-11.

Appellant's direct appeal rights, and on June 11, 2014, Appellant filed this timely, direct appeal *nunc pro tunc*.[2]

Appellant presents the following issues for this Court's consideration:

I. Was the weight of the evidence, beyond a reasonable doubt[]?

II. Should the trial court have instructed the jury on Voluntary Manslaughter as a lesser included offense of homicide?

Appellant's Brief at 5.[3]

In his first issue, Appellant presents a challenge to the weight of the evidence. "When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004) (quoting

---

[2] The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[3] In his Statement of Questions Involved, Appellant raised a third issue baldly challenging the sufficiency of the evidence. Appellant's Brief at 5. However, in the Argument portion of his brief, Appellant asserts that he would not pursue the sufficiency of the evidence issue on appeal. Appellant's Brief at 10. Confusingly, however, Appellant has, perhaps unintentionally, presented a challenge to the sufficiency of the evidence element to his argument regarding the weight of the evidence. We will address this sufficiency of the evidence component in our discussion on Appellant's challenge to the weight of the evidence. Additionally, we have re-ordered the issues for purposes of our discussion.

- 4 -

*Commonwealth v. Hunter*, 554 A.2d 550, 555 (Pa. Super. 1989)). "The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Forbes*, 867 A.2d 1268, 1273-1274 (Pa. Super. 2005). "Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id*. (citing *Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. Super. 2003)) (citations omitted).

Here, Appellant properly raised his challenge to the weight of the evidence in his May 7, 2013 post-sentence motion. As noted above, the trial court denied Appellant's motion in an order filed on August 19, 2013. In its opinion, the trial court explained its decision to deny Appellant's challenge to the weight of the evidence as follows:

> [The Court] presided over [Appellant's] jury trial and observed all testimony and evidence presented to the jury. The empanelled jury found that such evidence proved [Appellant's] guilt to first degree murder beyond a reasonable doubt. The Court does not find that the Jury's verdict was so contrary to the evidence as to shock one's sense of justice.

Trial Court Opinion, 11/15/13, at 9. We agree. As noted above, Appellant pointed a gun at Victim and shot him once in the side. When Victim

attempted to flee from the house, Appellant followed him and shot him again in the back. When Victim continued moving and tried to climb a fence to escape, Appellant shot him a third time causing Victim's death. Appellant's actions were witnessed by Brandi, Victim's wife, as revealed through her testimony that was deemed credible by the jury.

After review, we conclude that the verdict is supported by evidence of record, and it does not in any way shock our sense of justice. Accordingly, the trial court did not abuse its discretion, and Appellant's weight of the evidence claim fails.

We further note that, while Appellant presented this issue as a challenge to the weight of the evidence, he also argues that the element of malice, which is necessary for a first degree murder conviction,[4] was not established. Appellant's Brief at 11. Such a claim is a challenge to the sufficiency of the evidence.

In reviewing challenges to the sufficiency of the evidence, "our standard of review is *de novo*, however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the

_____

[4] ***See Commonwealth v. Martin***, 101 A.3d 706, 718 (Pa. 2014) (stating that to sustain a conviction for first-degree murder, the Commonwealth must prove the following elements beyond a reasonable doubt: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill (citing 18 Pa.C.S. § 2502(a)).

verdict winner." ***Commonwealth v. Forrey***, 108 A.3d 895, 897 (Pa. Super. 2015) (citation omitted). "Evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt." ***Id***. (citation omitted). The evidence does not need to disprove every possibility of innocence, and doubts as to guilt, the credibility of witnesses, and the weight of the evidence are left to the finder of fact. ***Id***. (citation omitted). We will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Id***. (citation omitted).

In a first-degree murder prosecution, both a specific intent to kill and malice may be inferred from the defendant's use of a deadly weapon upon a vital part of the victim's body. ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011). As noted above, Appellant, using a firearm, fired three shots at Victim's torso severing vital organs. N.T., 3/25/13, at 191-194. The first shot pierced Victim's liver, and the third shot tore through Victim's heart, killing him. ***Id***. We conclude that this evidence is sufficient to establish the malice element of first-degree murder. ***See Ramtahal***, 33 A.3d at 608 (concluding that the Commonwealth proved malice by establishing that the defendant pointed a loaded handgun at the victim and fired a bullet that pierced an artery in the victim's pelvis causing his death).

Appellant next argues that the trial court erred when it refused to instruct the jury on the crime of voluntary manslaughter. Appellant's Brief at 8. In reviewing claims involving jury instructions, we note as follows:

> A trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict.... Instructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury.

***Commonwealth v. Patton***, 936 A.2d 1170, 1176 (Pa. Super. 2007) (quoting ***Commonwealth v. Browdie***, 671 A.2d 668, 674 (Pa. 1996)). "A voluntary manslaughter instruction is warranted only where the offense is at issue and the evidence would support such a verdict." ***Commonwealth v. Johnson***, 42 A.3d 1017, 1036 (Pa. 2012) (citation omitted). "To support a verdict for voluntary manslaughter, the evidence would have had to demonstrate that, at the time of the killing, Appellant acted under a sudden and intense passion resulting from serious provocation by the victim." ***Id***.

In making the objective determination as to what constitutes serious provocation, reliance may be placed upon the cumulative impact of a series of related events. ***Commonwealth v. Carr***, 580 A.2d 1362, 1364 (Pa. Super. 1990) (citation omitted).

> Relevant to the heat of passion claim, we note that a defendant charged with murder may establish that he is guilty, not of murder, but rather of voluntary manslaughter, by proving that, at the time of the killing, he was acting under a sudden and intense passion resulting from serious provocation by the victim. Emotions encompassed by the term passion include anger, rage, sudden resentment or terror which renders the mind incapable of reason. Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective test: whether a reasonable man who was confronted with the provoking events would become impassioned to the extent that his mind was incapable of cool reflection. Significantly, we have clarified that both passion and provocation must be established,

and that if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

*Commonwealth v. Busanet*, 54 A.3d 35, 55 (Pa. 2012) (internal citations and quotation marks omitted).

Additionally, "[u]nder Pennsylvania law, a homicide defendant is entitled to a charge on involuntary or voluntary manslaughter only if the evidence adduced at trial would reasonably support a verdict on such a charge." *Commonwealth v. Soltis*, 687 A.2d 1139, 1141 (Pa. Super. 1996) (citation omitted). "In other words, a trial court can give a manslaughter instruction only when there is evidence tending to show that the defendant is not guilty of the crime of murder but is guilty of the lesser crime of manslaughter." *Id*. (citation omitted). "In determining whether the evidence would support a manslaughter charge, we must view the evidence in the light most favorable to the defendant." *Id*. (citation omitted).

In addressing this issue, the trial court concluded:

The evidence presented at [t]rial unambiguously showed that [Victim] was reading a newspaper in his mother's kitchen when [Appellant] shot him; [Victim] made no statements or actions to provoke [Appellant] at that time. Pursuant to Commonwealth v. Carr, the Court further considered "the cumulative impact of a series of related events". 580 A.2d 1362, 1364 (Pa.Super. 1990). [Appellant's] testimony and Defense Counsel's [closing] argument and [the] testimony elicited on cross-examination attempted to impugn the general character of [Victim], describing his alleged drug abuse, poor parenting and unemployment. Additionally, evidence was presented that [Appellant] believed [Victim] may have informed police of his

- 9 -

marijuana sales and that [Victim] fabricated the child abuse allegations. This Court first finds that such evidence is insufficient to cause a reasonable man to become impassioned to the extent that his mind was incapable of cool reflection. Compare Kim, *supra*.[5] This Court further finds that insofar as such actions may be "provoking", [Appellant] had ample time to cool, as the most recent incident, the child abuse allegations, came to light the day prior to the homicide. Compare Kim, *supra* (in which the Superior Court found that the time needed for the defendant to retrieve a handgun from his vehicle was sufficient time to cool).

Finally, as to "passion", [Appellant] testified that he [was] "upset about the child abuse allegations some", he was not at all upset about [Victim's] alleged cooperation with the police, and that he that he had no recollection of shooting [Victim].

Q. So, all that testimony on direct examination about what a piece of crap [Victim] was, that had nothing to do with why you pulled up at 409 Jackson Street; isn't that right?

A. I wanted to see what was going on, CYS was supposed to be there, and I wanted to see what was developed from that.

…

Q. But you weren't upset about it at this point because you had already learned about it the day before; isn't that right?

A. Yeah, I would say I was still upset about it some.

Q. But there had been a time period for you to kind of calm down about this situation; isn't that right?

A. Somewhat. Down at the bar it took my mind off of it.

---

[5] ***See Commonwealth v. Kim***, 888 A.2d 847 (Pa. Super. 2005) (holding that where a defendant has time to cool off, but instead chooses to get a gun and return to kill the victim, there is no provocation, and an instruction on voluntary manslaughter is neither supported by the evidence nor warranted).

Q. And you were worried that [Victim] was going to rat you out because you knew you were selling weed; isn't that right?

A. I thought about it, wasn't really worried about it. It was, $20 worth, you know.

Q. Isn't it true that you did sell marijuana?

A. On very few occasions.

Q. And you were worried about [Victim] ratting you out for that; isn't that right?

A. Not really.

Q. Not really? So you did or you didn't tell Ellen that you were concerned about [t]hat?

A. I was concerned that he might, but it wasn't nothing I could do about it. It was nothing.

Q. Do you remember talking to Brandi?

A. I remember talking to Brandi.

Q. And you heard Brandi testify; isn't that right?

A. Yes.

Q. And you were short with her, but there were no loud voices; isn't that right?

A. Yes.

Q. In other words, nothing happened at that point in time that caused you to become enraged; isn't that right?

A. Apparently not.

Q. Do you remember pointing that gun at [Victim]?

A. No.

Q. Do you remember firing a shot into [Victim]?

A. No.

…

Q. Do you remember standing out that side door and taking another shot into [Victim's] back? Do you remember that?

A. No, I don't.

Q. Do you remember [Victim] trying to save his life and go over that fence? Do you remember that?

A. No.

Q. Do you remember firing another shot?

A. No, ma'am.

As in Patton, *supra*,[6] wherein the defendant's testimony that that shooting was accidental, and not the result of passion, precluded an instruction for voluntary manslaughter, [Appellant's] testimony that he had no recollection of the shooting, similarly negates any inference, via his own testimony, that [Appellant] was acting in passion. Witnesses testified that [Appellant] was "angry", "mad", "short" and "in a bad mood" when he arrived at the residence but there was no evidence presented that [Appellant] went into a sudden and intense anger, rage, resentment or terror immediately prior to shooting [Victim]. See Commonwealth v. Busanet, 54 A.3d 35, 55 (Pa. 2012) (defining "emotions encompassed by the term 'passion'").

Based upon the foregoing, an instruction for voluntary manslaughter was not warranted, as there was not legally adequate provocation, there was ample time for [Appellant] to coolly reflect upon the inadequate provocation, and there was no evidence that [Appellant's] actions were under a heat of passion.

Trial Court Opinion, 11/15/13, at 12-15 (footnotes omitted).

---

[6] **See Commonwealth v. Patton**, 936 A.2d 1170 (Pa. Super. 2007) (holding that where the defendant argued that a shooting death was an accident, an instruction for voluntary manslaughter, which is an intentional killing, was not warranted).

We agree with the trial court. The evidence revealed that while Victim silently read a newspaper, Appellant had a conversation with Brandi. Appellant then pulled out a gun and shot Victim. Appellant followed Victim outside and shot him two more times until the third shot severed Victim's heart and he stopped moving. There was no evidence of provocation, and despite multiple opportunities to cease his attack and cool off, Appellant instead chose to follow Victim as he attempted to escape and repeatedly shoot him. Thus, we discern no error in the trial court refusing to give an instruction on the crime of voluntary manslaughter.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2015

- 13 -