J-S93035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY DARRELL HEATH, | |
| Appellant | No. 2577 EDA 2015 |

Appeal from the Judgment of Sentence July 29, 2015
in the Court of Common Pleas of Lehigh County
Criminal Division at No.: CP-39-CR-0001175-2014

BEFORE: DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:          **FILED FEBRUARY 21, 2017**

Appellant, Anthony Darrell Heath, appeals from the judgment of sentence imposed on July 29, 2015, following his jury conviction of murder of the first degree, receiving stolen property, access device fraud, abuse of a corpse, and tampering with or fabricating evidence.[1] Appellant challenges the trial court's denial of a motion to suppress statements he made to the police and the court's admission of a key fob into evidence at trial. We affirm.

We take the factual and procedural history in this matter from our review of the certified record, the trial court's October 22, 2014 opinion

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502, 3925, 4106(a)(1)(ii), 5510, and 4910 respectively.

denying Appellant's motion to suppress, and its April 7, 2016 Rule 1925(a) opinion. On February 1, 2014, at approximately 9:30 a.m., police responded to a report of a burning body at the bottom of a roadside embankment in Jim Thorpe, Pennsylvania. Officers observed wire wrapped around the neck of the victim, tied tightly with knots and loops. Adjacent to the body, officers discovered a plastic Walmart shopping bag, which contained a receipt for a latch tote, lighter fluid, and a lighter, purchased earlier that same morning, at 5:40 a.m., from the Walmart located on Millcreek Road in Allentown, Pennsylvania. Officers were unable to identify the body.

Pennsylvania State Police Officers went to the Walmart on Millcreek Road and, using video surveillance, observed an individual, later identified as Appellant, purchase the items. In a separate transaction, Appellant utilized a credit card belonging to Angela Steigerwalt to purchase a batting glove, t-shirts, underwear, a watch, and jeans. Further surveillance showed Appellant entering a vehicle, which was later determined to be Ms. Steigerwalt's, and leaving the parking lot. Officers went to Ms. Steigerwalt's address and encountered her husband, Gary Steigerwalt, who was on his way to report his wife missing. Mr. Steigerwalt provided the troopers with his wife's vehicle information and registration and informed them that it was equipped with an OnStar tracking system. Troopers contacted OnStar and, within ten minutes, located the vehicle in Kinston, North Carolina.

Police officers in North Carolina stopped the vehicle, which was being driven by Appellant, and took Appellant to the Kinston Department of Public Safety. There, Appellant was interviewed by Detective William Barss. The interview was audio and video recorded and Appellant was advised of his **Miranda**[2] rights and signed a waiver form. During the interview

> Detective Barss informed the Appellant that he wished to talk to him about his knowledge of Ms. Steigerwalt's vehicle, identification belonging to Ms. Steigerwalt and another individual, Dwight McCurry, found in the glove compartment of the vehicle, and his use of Ms. Steigerwalt's credit card. The Appellant indicated that he had Ms. Steigerwalt's permission to use the car so he could visit his brother at Camp Lejeune. Further he indicated that he had spoken to Ms. Stiegerwalt that morning (February 2, 2014) and informed her that the car had a flat tire and she indicated that the Appellant had her permission to use her credit card to pay for repairs. The Appellant stated that he intended to return to Pennsylvania the next day. The Appellant indicated that he and Ms. Steigerwalt were good friends and that she had indicated that she was having problems in her relationship. He further indicated that Mr. McCurry was his roommate.

(Trial Court Opinion, 4/07/16, at 8).

The interview lasted one and a half hours. After the interview, Appellant read his responses, which had been transcribed by Detective Barss, and he signed his initials at the bottom of each page of notes. Appellant was taken to a local magistrate and charged with various crimes related to possession of the vehicle and credit cards. The magistrate indicated to Appellant that there was a hold placed on him because of a

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

homicide investigation. Detective Barss did not discuss the homicide investigation with Appellant, and when asked, he told Appellant that he did not know about it.

On February 4, 2014, Pennsylvania State Troopers Joseph Campbell, Nicholas De La Iglesia, Raymond Judge, and John Corrigan drove to North Carolina to interview Appellant. On February 5, 2014, Trooper Campbell interviewed Appellant concerning his possession of Ms. Steigerwalt's vehicle. Appellant was read his **_Miranda_** warnings and signed a written waiver of his rights. The interview was audio and video recorded. During the interview

> Appellant stated that he and the victim had decided that they were tired of living in the Lehigh Valley and that he had gone to North Carolina to check the area out. The Appellant stated that he and Ms. Steigerwalt were engaged in a "friends with benefits" relationship and that she allowed him to use her car and credit card for the trip to North Carolina. Prior to the Appellant leaving the area, the Appellant told Trooper Campbell that he and the victim had sex in the Appellant's apartment in . . . Allentown, Lehigh County, Pennsylvania.
>
> The trooper then explained to the Appellant that the state police "had a pyramid of evidence" against him and the Appellant began to change his story. The Appellant stated that after he and the victim had had sex in his apartment, he blacked out. When he came to, he realized that the victim wasn't moving and he panicked. The Appellant then went in to "damage control" mode and proceeded to the Walmart on Millcreek Road in the victim's car. He bought the tote, lighter fluid and lighter using her cash and then bought other personal items using the victim's credit card. He stated he returned to his apartment and tied the victim up with speaker wire, wrapped her in a blanket, placed her in the tote, and put the tote in the car. The Appellant then stated that he drove to Jim Thorpe because he believed the area to be remote and wooded.

In Jim Thorpe, the Appellant stated that he slid the tote containing Ms. Steigerwalt's body down the embankment and lit the tote on fire. In the transition from the car to the embankment, the Appellant had dropped the keyless ignition starter (key fob) to the vehicle. The Appellant started to drive away, but was alerted that the key fob was missing. The Appellant returned to the scene, collected the key fob, and returned Ms. Steigerwalt's vehicle to Allentown. He collected his belongings from his apartment, had one of the tires on the car repaired, and drove to North Carolina.

(*Id.* at 10-11).

Trooper Campbell's interview of Appellant lasted approximately two hours. During the interview, Trooper Campbell used the phrase "cooperate to graduate" and indicated that if Appellant was truthful, he would speak to the North Carolina authorities about dropping their case against him. At the beginning of the interview, Appellant indicated that he did not feel well, and Trooper Campbell responded that he looked okay. At one point Appellant asked for a break, and Trooper Campbell replied that he seemed okay and did not give him a break. Although the interview started with questions about the stolen vehicle, when the focus of the interview turned to Ms. Steigerwalt's death, Appellant was not reissued *Miranda* warnings and was not told that he was a suspect.

On February 6, 2014, Trooper Judge retrieved Appellant from the North Carolina jail, introduced himself as a Pennsylvania State Trooper, and, together with Trooper Campbell, began to drive Appellant to Pennsylvania in a Ford sedan. Trooper Judge and Appellant sat in the rear passenger compartment. He informed Appellant that they were bringing him to

Pennsylvania regarding the theft of Ms. Steigerwalt's vehicle. Appellant asked if he was under arrest for her death, to which Trooper Judge responded that he was not currently under arrest. Trooper Judge did consider him a suspect in the homicide. Trooper Judge then gave Appellant his **Miranda** warnings and proceeded to interview him for the first three and one half to four hours of the journey. The interview was neither audio nor video recorded. Trooper Judge indicated that the tone was cordial.

During the interview, Appellant's answers were consistent with those he gave to Trooper Campbell, indicating that he "blacked out." When Trooper Campbell stopped the vehicle to get gas, and Trooper Judge was alone with Appellant, Appellant told Trooper Judge that he would not fight the charges. Trooper Judge told Appellant that he did not believe his original story and that this was the time to come clean. Trooper Campbell arrived and pulled the vehicle into a parking spot. Appellant asked to pray and the troopers obliged. When he finished, they continued the interview but did not reissue **Miranda** warnings.

Appellant told the officers that he and Ms. Steigerwalt had a sexual relationship and that she had gone to his apartment in Allentown after work. They had sex, after which they discussed upcoming plans, and Ms. Steigerwalt told Appellant that she would not drive him to a custody hearing involving his son. Appellant became enraged and grabbed a stereo wire and used it to strangle Ms. Steigerwalt from behind. Appellant stated that he strangled her for what felt like ten minutes, until she was black and blue in

the face and he could no longer recognize her. He stopped strangling her when he realized she was dead.

On February 7, 2014, Appellant was charged with the homicide and related offenses. On June 4, 2014, Appellant filed a motion to suppress statements he made to law enforcement. The court conducted a pre-trial motion hearing on September 5 and 10, 2014. On October 22, 2014, the court issued an order and opinion denying Appellant's motion. On December 17, 2014, Appellant filed a *pro se* motion to waive counsel. The court conducted a hearing on January 15, 2015, after which it determined that Appellant had waived his right to counsel knowingly, intelligently, and voluntarily. The court withdrew the representation of the public defender's office, but appointed the office as standby counsel for Appellant.

A jury trial commenced on June 15, 2015, where Appellant represented himself. At trial, the Commonwealth introduced testimony from Mr. Steigerwalt, who explained that the victim's vehicle utilized a key fob instead of an actual key to operate it, and that both he and the victim had a key fob. Mr. Steigerwalt produced his key fob, which the Commonwealth offered into evidence. Appellant, acting as his own counsel, objected to admission of the key fob explaining that he had not seen it and did not verify it. The court overruled the objection and received the key fob into evidence.

On June 23, 2015, a jury convicted Appellant of first-degree murder, receiving stolen property, access device fraud, abuse of a corpse, and tampering with or fabricating evidence. On July 29, 2015, Appellant was

sentenced to life without parole, followed by an aggregate term of not less than eight nor more than sixteen years of incarceration. (**See** N.T. Sentencing, 7/29/15, at 35-37).

On August 17, 2015, at Appellant's request, the court appointed counsel to represent him for his appeal. Appellant filed a timely notice of appeal on August 27, 2015.[3]

Appellant raises two questions on appeal.

[1.] Whether the trial court erred in [sic] when it denied [Appellant's] pre-trial motion to suppress statements given during a custodial interrogation?

[2.] Whether the trial court erred in permitting testimony regarding a key [fob] over [Appellant's] objections at trial?

(Appellant's Brief, at 6).

In his first issue, Appellant claims that the trial court erred in denying his motion to suppress the statements that he made to police while in North Carolina and while being transported to Pennsylvania because these statements were involuntary. (**See id.** at 10-14). Specifically, he argues that his waiver of his **Miranda** rights was invalid in the totality of the circumstances because officers only informed him that the topic of

---

[3] Pursuant to the trial court's order, Appellant filed a statement of errors complained of on appeal on December 9, 2015. **See** Pa.R.A.P. 1925(b). Because the statement was untimely, Appellant filed it together with a motion for extension of time. The court granted the motion for extension of time because appointed counsel was not trial counsel. On April 7, 2016, the court issued its opinion. **See** Pa.R.A.P. 1925(a).

questioning would concern his possession of the victim's car, not his involvement in a homicide. (*See id.* at 13-14). He further claims that his waiver was involuntary because it was unlawfully induced by the promise of the North Carolina charges being dropped. (*See id.* at 14). Appellant's issue does not merit relief.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from these facts are correct. When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts an [sic] may reverse only if the legal conclusions drawn therefrom are wrong.

The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review.

> The test for determining the voluntariness of a confession and the validity of a waiver looks to the totality of the circumstances surrounding the giving of the confession. Some of the factors to be considered include: the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any other factors which may serve to drain one's powers of resistance to suggestion and coercion.

> In determining voluntariness, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. By the same token, the law does not require the coddling of those accused of crime. One such need not be protected against his own innate desire to unburden himself.

. . . For a **Miranda** waiver to be valid, it must be made knowingly, voluntarily and intelligently. [T]he waiver must be the product of a free and deliberate choice rather than intimidation, coercion, or deception, and must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.

**Commonwealth v. Paxton**, 821 A.2d 594, 598 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1282 (Pa. 2004) (citations and quotation marks omitted).

We have held that "the suspect need not have knowledge of the 'technicalities' of the criminal offense involved; rather, it is necessary only that he be aware of the 'transaction' involved." **Commonwealth v. Carr**, 580 A.2d 1362, 1365 (Pa. Super. 1990), *appeal denied*, 592 A.2d 42 (Pa. 1991) (citation omitted).

Where, however, the defendant has not been furnished with such information and a pre-trial challenge concerning the validity of a confession is made on this ground, the Commonwealth must prove by a preponderance of the evidence that the defendant knew of the occasion for the interrogation. This burden may sometimes be satisfied by the establishment of circumstances attending the interrogation, such as the prior statements of the suspect, or the fact that interrogation follows hard upon the criminal episode and there is no circumstance lending ambiguity to the direction and purpose of the questioning.

*Id.* at 1365-66 (citations and quotation marks omitted.) "[W]e have never held, that a suspect must be informed of each and every crime under investigation. On the contrary, we have consistently held that the Commonwealth, in meeting its burden of proving a waiver was knowing and intelligent, may establish the circumstances attending the interrogation and the lack of ambiguity as to the questioning's direction and purpose." *Id.* at 1366 (citation omitted).

- 10 -

Furthermore, "[i]t is well-established that a confession induced by a promise of immunity from a person in apparent authority to perform the promise is involuntary." *Commonwealth v. Peters*, 373 A.2d 1055, 1062 (Pa. 1977) (citations omitted).

Here, the suppression court found that Appellant's waiver of his *Miranda* rights was knowing, intelligent, and voluntary, and that the statements he gave were voluntary. (*See* Trial Ct. Op., 10/22/14, at 14). It found that Appellant had been in custody since he was stopped on February 2, 2014, while driving the victim's vehicle. Appellant was given his *Miranda* warnings by Detective Barss, and was interviewed concerning the victim, her vehicle, and the identification and credit cards in the vehicle. During the interview, Appellant did not appear intoxicated or impaired and no threats or promises were made by the detective.

The court also found that the statement made to Trooper Campbell on February 5, 2014, were voluntarily given, and that Appellant had knowingly, intelligently, and voluntarily waived his *Miranda* rights. (*See id.*). The court found that Trooper Campbell explained that he wanted to talk with Appellant about the car and why he was being held in North Carolina, and then orally issued Appellant his *Miranda* warnings, which Appellant waived in writing. The court found that given the totality of the circumstances, although Appellant was not specifically told he would be interviewed with regard to a homicide, Appellant had asked Detective Barss about a homicide investigation, and the local magistrate mentioned something about homicide

charges to Appellant. (*See id.* at 15). Thus the court concluded that the "attendant circumstances establish that [Appellant] was aware of the homicide investigation." (*Id.* at 16).

The court considered Trooper Campbell's use of the phrase "cooperate to graduate" and his statements regarding cooperating with Appellant about the vehicle charges in North Carolina, and found that the statements were not made until after Appellant waived his *Miranda* rights. (*See id.* at 16-17).

Finally, with regard to the interview while in transit to Pennsylvania, the court found that the totality of the circumstances established that Appellant made a knowing, intelligent, and voluntary waiver of his *Miranda* rights. (*See id.* at 18). The court further found that Appellant was able to answer the trooper's questions and never indicated that he wanted to stop. Finally, the court found that Appellant was well aware of the purpose of the interview because he had already participated in two interviews concerning Ms. Steigerwalt and had given statements about his participation in her death. (*See id.* at 18-19).

Upon review, we conclude that the trial court's findings are supported by the certified record. Appellant's statements to Detective Barss and Trooper Campbell at the office of public safety, and his statements to Troopers Campbell and Judge while in transit from North Carolina to Pennsylvania were voluntarily given. *See Paxton*, *supra* at 598. Appellant knew that the occasion for the interviews with Troopers Campbell and Judge

- 12 -

concerned Ms. Steigerwalt's death, and knowingly, intelligently, and voluntarily waived his **_Miranda_** rights prior to making any statements. Furthermore, we conclude that Appellant was not induced into waiving his rights by any promise of charges being dropped. **_See Peters_**, **_supra_** at 1062. Accordingly, we conclude the record supports the trial court's denial of Appellant's motion to suppress his statements to law enforcement. **_See_** **_Paxton_**, **_supra_** at 598. Appellant's first issue does not merit relief.

In his second issue, Appellant claims that the trial court erred by admitting the victim's husband's key fob into evidence. (**_See_** Appellant's Brief, at 14-16). He argues that the key fob was not relevant to any crimes being prosecuted at trial, and if relevant, its potential for unfair prejudice outweighed its probative value because it was a sentimental talisman kept by the victim's husband and its emotional impact was highly prejudicial. (**_See id._** at 16).[4] We disagree.

> Our standard of review of a trial court's evidentiary ruling
> is as follows:

---

[4] At trial, Appellant objected to the key fob because he had not seen it and was not able to verify it. (**_See_** N.T. Trial, 6/18/15, at 76). However, on appeal, he purports to challenge admissibility of the key fob based on relevance and undue prejudice. (**_See_** Appellant's Brief, at 14-16). Thus we could conclude that his challenge to the key fob is waived because he has asserted a different ground for objecting to the evidence. **_See_** **_Commonwealth v. Phillips_**, 141 A.3d 512, 522 (Pa. Super. 2016) (concluding appellant barred from asserting "a new and different theory of relief" for the first time on appeal). However, we decline to find waiver because Appellant represented himself at trial and objected to the admission of the key fob into evidence.

The admissibility of evidence is within the sound discretion of the trial court, wherein lies the duty to balance the evidentiary value of each piece of evidence against the dangers of unfair prejudice, inflaming the passions of the jury, or confusing the jury. We will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion.

Pennsylvania Rule of Evidence 402 provides that, generally, "[a]ll relevant evidence is admissible" and "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is that which has "any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401(a), (b).

**Commonwealth v. Bergen**, 142 A.3d 847, 850 (Pa. Super. 2016) (case citation omitted).

However, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "Evidence is not unfairly prejudicial simply because it is harmful to the defendant's case. Rather, exclusion of evidence on this ground is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." **Commonwealth v. Foley**, 38 A.3d 882, 891 (Pa. Super. 2012), *appeal denied*, 60 A.3d 535 (Pa. 2013) (citations and quotation marks omitted).

Here, the trial court found that the key fob was referred to by Appellant in his statement to the police, both in his initial statement that the

victim had given him the key fob to borrow her car, and in his second statement that he dropped the key fob after setting her body on fire and had to return and find it in order to drive away. (*See* Trial Ct. Op., 4/07/16, at 17). Thus, the court found that the key fob was relevant and admissible because it substantiated that the victim's car was operated by using a key fob. (*See id.*).

Upon review, we agree with the trial court's conclusion that the key fob and Mr. Steigerwalt's testimony concerning it was relevant. Moreover, we conclude that the key fob would not inflame the jury such that it was unable to weigh the evidence impartially. *See Foley*, *supra* at 891. Therefore, we conclude that the trial court did not abuse its discretion in admitting evidence concerning the key fob. *See Bergen*, *supra* at 850. Appellant's second issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2017